UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
FRANK CIARAMELLA and RICHARD                                :
PALAZZOLO, on behalf of themselves and all                  :
others similarly situated,                                  :
                                                            :
                                                            :
                                    Plaintiffs,             :    **CLASS ACTION COMPLAINT**
                                                            :
        -against-                                           :    18-cv-6945
                                                            :
HOWARD ZUCKER, as Commissioner of the                       :
Department of Health,                                       :
                                                            :
                                    Defendant.              :
                                                            :
------------------------------------------------------------x

## PRELIMINARY STATEMENT

1. This case is about the thousands of low-income New Yorkers who are being denied medically necessary dental care by New York State. Plaintiffs Frank Ciaramella and Richard Palazzolo ("Plaintiffs") bring this action individually and on behalf of a class of New York Medicaid-eligible individuals whose expenses associated with medically necessary dental services are not reimbursable by New York's Medicaid program ("New York Medicaid" or the "Program") because of the Program's categorical ban on dental implants and strict limits on replacement dentures.

2. Adequate dental care is critical to overall health and well-being. A lack of adequate dental care can lead to tooth decay and loss, gum degeneration, mouth lesions, infection, and other serious conditions. A person afflicted with these conditions, in turn, is unable to ingest food sufficient to maintain a nutritious diet, which can cause, and exacerbate, other serious health conditions. Individuals with poor oral health can also suffer stigmatization, leading to social isolation and inability to find employment. When patients are

unable to access adequate dental care, the State suffers economic burdens including loss of work productivity, increased emergency room use, and higher health care costs.

3. Unfortunately, many New York residents who rely on New York Medicaid to fund their health care needs are denied coverage of the dental care they require to avoid these dire consequences. Although New York Medicaid provides coverage for dental services, it has instituted categorical bans on certain types of dental services, such as dental implants, which are medically necessary for some Medicaid-eligible individuals. The Program also imposes rigid restrictions on other services such as replacement dentures, which likewise result in denials of coverage for medically necessary care. For many Medicaid-eligible New Yorkers, these services are essential to their overall health and well-being. The categorical bans and other restrictions imposed on such treatments violate the requirements of the Medicaid Act, 42 U.S.C. §§ 1396 *et seq.*, the Americans with Disabilities Act, 42 U.S.C.A. §§ 12101 *et seq.* (the "ADA"), and the Rehabilitation Act of 1973, 29 U.S.C.A. §§ 794 *et seq* (the "Rehabilitation Act").

4. Plaintiffs therefore bring this action on behalf of themselves and all others similarly situated, pursuant to 42 U.S.C. § 1983, against Dr. Howard Zucker, acting in his official capacity as Commissioner of the New York State Department of Health ("Defendant"), to remedy these violations.

5. As set forth below, Plaintiffs seek declaratory and injunctive relief to enjoin Defendant from continued denial of medically necessary dental services and other appropriate relief on the grounds that the dental services regulations and policies at issue, and Defendant's implementation of them, conflict with the Medicaid Act, the ADA, and the Rehabilitation Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the parties and the claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

7. Plaintiffs' claims for declaratory relief are brought pursuant to 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because certain Plaintiffs reside within this judicial district, certain events giving rise to this action occurred in this judicial district, and Defendant is subject to personal jurisdiction in this judicial district.

## THE PARTIES

9. Frank Ciaramella is a 57-year-old Medicaid and Medicare recipient who lives alone in Richmond County.

10. Richard Palazzolo is a 60-year-old Medicaid recipient who lives in supportive housing in Suffolk County.

11. Defendant Howard Zucker is the Commissioner of the Department of Health. As such, he is responsible for the administration of the Program and supervision of the administration of the Program by local social services districts within New York State. He maintains an office at Corning Tower, Empire State Plaza, Albany, New York.

## CLASS ACTION ALLEGATIONS

12. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of themselves and a class of all others similarly situated, defined as: All New York Medicaid-eligible individuals whose expenses associated with medically necessary dental services are not reimbursable by New York Medicaid because of the Program's categorical ban on dental implants and limits on replacement dentures.

13. The class is so numerous that joinder of all members is impracticable.

14. There are questions of law and fact common to the class, including, but not limited to, whether New York's non-coverage of certain dental services violates the Medicaid Act, the ADA, and the Rehabilitation Act, and whether declaratory and injunctive relief is therefore appropriate.

15. The named Plaintiffs' claims are typical of the claims of the class. The named Plaintiffs' and the class members' claims arise from the promulgation and enforcement of rules, regulations, and policies governing coverage and non-coverage of dental services under the Program.

16. Declaratory and injunctive relief is appropriate with respect to the class as a whole because Defendant has acted on grounds applicable to the class.

17. The named Plaintiffs and the proposed class members are represented by The Legal Aid Society and Willkie Farr & Gallagher LLP, whose attorneys are experienced in class action litigation and will fairly and adequately represent the class.

18. A class action is superior to other available methods for a fair and efficient adjudication of this matter in that the litigation of separate actions by individual class members would unduly burden the Court and create the possibility of conflicting decisions.

## FEDERAL STATUTORY AND REGULATORY SCHEME

19. Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, creates the federal Medicaid program, through which the federal government provides matching funds to states to provide medical assistance to residents who meet certain eligibility requirements. 42 U.S.C. § 1396b. The objective of the Medicaid program is to enable each state to furnish

medical assistance to individuals whose incomes and resources are insufficient to meet the costs of necessary medical services. 42 U.S.C. § 1396-1.

20. States are not required to participate in the Medicaid program, but if they choose to, they must comply with federal Medicaid statutes and their implementing regulations. 42 U.S.C. §§ 1396-1, 1396a, 1396c.

21. The federal Medicaid program requires a participating state to establish or designate a single state agency that is responsible for administering or supervising the administration of that state's Medicaid program. 42 U.S.C. § 1396a(a)(5).

22. Participating states also must submit a "state plan" to the Secretary of the United States Department of Health and Human Services ("HHS") for approval before that state may receive Medicaid funds. 42 U.S.C. §§ 1396-1, 1396(a).

23. An individual is "categorically needy" and eligible for Medicaid if he or she falls into one of the nine eligibility categories set forth in 42 U.S.C. §§ 1396a(a)(10)(A)(i)(I)-(IX); *see also* 42 C.F.R. § 435.100 ("This subpart prescribes requirements for coverage of categorically needy individuals."). Individuals who receive Supplemental Security Income ("SSI") are considered "categorically needy" and therefore eligible for Medicaid. 42 U.S.C. § 1396a(a)(10)(A)(i)(I); 42 C.F.R. § 435.120. Certain individuals whose income is below 133 percent of the federal poverty level are also considered "categorically needy" and therefore eligible for Medicaid. 42 U.S.C. § 1396a(a)(10)(A)(i)(VII); 42 C.F.R. § 435.119(b).

24. Section 1396a(a)(10)(A) of the Medicaid Act (the "Availability Provision") mandates that a state plan make medical assistance available to all categorically needy individuals by covering, at a minimum, certain enumerated services. 42 U.S.C.

§ 1396a(a)(10)(A). One of the enumerated services is "medical and surgical services furnished by a dentist." 42 U.S.C. § 1396d(a)(5).

25. Federal law and regulations lists services that are not required but that may be furnished under the state plan at the state's option. 42 U.S.C. § 1396d(a); 42 C.F.R. § 40.225. Dental services for adults 21 years of age and older are not mandatory services, and therefore "may be furnished under the State plan at the State's option." 42 C.F.R. §§ 440.210, 220, 225. Dental services are defined in the Medicaid Act's implementing regulations as "diagnostic, preventative, or corrective procedures provided by or under the supervision of a dentist in the practice of his profession, including treatment of – (1) The teeth and associated structures of the oral cavity; and (2) Disease, injury or impairment that may affect the oral or general health of the beneficiary." 42 C.F.R. § 440.100(a).

26. Once a state decides to provide Medicaid coverage, all services offered by the state under the Medicaid Act, including optional services such as dental services, are subject to the requirements of the Medicaid Act and its implementing regulations. Under the Medicaid Act's implementing regulations, "[e]ach service must be sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b).

27. Section 1396(a)(10)(B) of the Medicaid Act (the "Comparability Provision") requires both that "the medical assistance made available to any [categorically needy] individual . . . shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual," and that such medical assistance "shall not be less in amount, duration, or scope than the medical assistance made available to [non-categorically needy] individuals." 42 U.S.C. § 1396a(a)(10)(B).

28. Federal regulations likewise require that medical assistance be provided in equal amount, duration, and scope to all categorically needy Medicaid recipients. 42 C.F.R. § 440.240(b)(1).

29. Section 1396a(a)(8) of the Medicaid Act (the "Reasonable Promptness Provision") further requires that states "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8).

30. The ADA was enacted to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

31. Title II of the ADA prohibits discrimination against individuals with disabilities by any public entities, including state and local governments, their departments, and agencies. 42 U.S.C. §§ 12131, 12132. "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

32. The regulations implementing the ADA require state governments and their agencies and designees to make reasonable modifications to policies, practices and procedures to protect against discrimination on the basis of disability and to ensure services are provided in the most integrated setting appropriate to the needs of individuals with disabilities. *See* 28 C.F.R. § 35.130(b)(7); *see also* 28 C.F.R. § 35.130(d).

33. Section 504 of the Rehabilitation Act prohibits discrimination against individuals with disabilities by any program or activity, including any department or agency of a State government receiving federal financial assistance. 29 U.S.C. § 794(a), (b). It provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); 45 C.F.R. §§ 84.4(a), 84.4(b)(1)(i), (iv), (vii); 84.4(b)(2); 84.52(a)(1), (4), (5).

## NEW YORK STATE STATUTORY AND REGULATORY SCHEME

34. New York has opted to participate in the federal Medicaid program. N.Y. Soc. Serv. L. § 363-a.

35. New York also has opted to provide coverage for dental services under the Program. N.Y. Soc. Serv. L. § 363-a.

36. The Program is administered in accordance with Sections 363-369 of the New York Social Services Law, and the regulations promulgated thereunder. N.Y. Soc. Serv. L. §§ 363-369; 18 N.Y.C.R.R. §§ 358, 360, 505, *et seq*.

37. New York has assigned responsibility for administering the Program to the New York State Department of Health ("DOH").

38. New York defines the "medical assistance" to be provided under the Program very broadly to include payment for "medical, *dental* and remedial care, services and supplies . . . which are necessary to prevent, diagnose, correct or cure conditions in the person that cause acute suffering, endanger life, result in illness or infirmity, interfere with such person's capacity for normal activity, or threaten some significant handicap." N.Y. Soc. Serv. Law § 365-a(2) (emphasis added); *see also* 18 N.Y.C.R.R. § 513.0. The statute also provides that

"dental prosthetic appliances furnished in accordance with the regulations of the department" are considered standard care in certain circumstances. N.Y. Soc. Serv. Law § 365-a(2)(g).

39. The implementing regulations under the Social Services Law state that "only preventive, prophylactic and other routine dental care, services and supplies, and dental prosthetic and orthodontic appliances required to alleviate a serious health condition including one which affects employability" must be provided, and the regulation defines dental care, services and supplies as those "deemed essential to maintain an adequate level of dental health." 18 N.Y.C.R.R. § 506.2. Another regulation lists ten services for which prior authorization is not required and states that prior authorization is required for all services not listed and "all dental prosthetic appliances which shall be furnished only if required to alleviate a serious health condition including one which affects employability." 18 N.Y.C.R.R. § 506.3.

## DEFENDANT'S PRIOR VIOLATIONS OF THE MEDICAID ACT

40. Lack of coverage for medically necessary dental care is only the latest example of DOH's denial of medically necessary care.

41. In 2015, DOH was found to have violated the Medicaid Act by refusing to provide medically necessary care to transgender Medicaid recipients. *See Cruz v. Zucker*, 195 F. Supp. 3d 554 (S.D.N.Y. 2016), *on reconsideration*, 218 F. Supp. 3d 246 (S.D.N.Y. 2016).

42. At issue in *Cruz* was a DOH regulation that prohibited Medicaid coverage for transgender-related health care. Although DOH amended the regulation several times during the course of the lawsuit, the court found that, even in amended form, the regulation still barred medically necessary care.

43. In particular, the court found that the categorical bans on treatment imposed by DOH violated the Availability Provision. It also found that DOH violated the Comparability

Provision because certain of the same treatments sought by the plaintiffs were covered by New York Medicaid for other diagnoses.

44. DOH was also found to have violated the Comparability Provision in 2014 by providing coverage for orthopedic footwear and compression stockings only to individuals with certain conditions, and not others, because such restrictions, based solely on the nature of a patient's medical condition, violated the Medicaid Act. *See Davis v. Shah*, No. 12-cv-6134 (CJS), 2012 WL 1574944, at *6 (W.D.N.Y. May 3, 2012), *aff'd in relevant part*, 821 F.3d 231 (2d Cir. 2016).

## FACTS

45. There are 32 teeth in the adult mouth: 12 anterior teeth and 20 posterior teeth. The specific rules on how and when New York will provide Medicaid coverage for care and services for adult teeth are outlined in The New York State Medicaid Program Dental Policy and Procedure Code Manual (the "Manual"). Of course, poor oral health can adversely affect health outcomes beyond the mouth. The rigid rules set forth in the Manual, however, restrict coverage for many services that may be necessary for Medicaid recipients to maintain their overall health.

46. The Manual states that the Program "shall include only ESSENTIAL SERVICES rather than comprehensive care. The provider should use this Manual to determine when the Medicaid program considers dental services 'essential'. The application of standards related to individual services is made by the DOH when reviewing individual cases." Section II, page 7.

47. The Manual specifically excludes "[d]ental implants and related services" from the scope of Medicaid coverage. Section II, page 9.

48. Upon information and belief, New York provides coverage for dental implants for some individuals in some circumstances. New York Medicaid publishes procedure codes for covered services. In its list of procedure codes for surgery, the Program lists codes for both subperiosteal and endosteal implants when involved in the "[r]econstruction of mandible or maxilla." New York State Medicaid Program Physician – Procedure Codes, Section 5- Surgery at 37 (2018).

49. According to the American Academy of Implant Dentistry, "[e]ndosteal [implants] . . . are placed in the jawbone[, are t]ypically . . . shaped like small screws, [and] are the most commonly used type of implant," whereas "[s]ubperiosteal [implants] . . . are placed under the gum but on, or above, the jawbone."[1] *Types of Implants and Techniques*, American Academy of Implant Dentistry (2018).

50. In addition, the Manual provides that "[c]omplete dentures and partial dentures will not be replaced for a minimum of eight (8) years from initial placement except when they become unserviceable through trauma, disease or extensive physiological change. Prior approval requests for premature replacement will not be reviewed without supporting documentation of medical necessity. Dentures which are lost, stolen or broken will not be replaced unless there exists a serious health condition that has been verified and documented." Section IV, page 44.

51. The above Manual provisions completely ignore the close connection between poor oral health and a range of other health problems. This is particularly true for the Medicaid-eligible population, which is more likely to experience untreated tooth decay, relative to their higher-income counterparts.

---

[1] Available at https://www.aaid-implant.org/dental-implants/types-of-implants-and-techniques/.

52. Periodontal disease is associated with an increased risk of cancer and cardiovascular disease. Poor oral health and tooth loss can lead to poor nutrition, which also compounds health problems. Poor nutrition in turn increases the odds of oral disease, thus trapping individuals in a vicious cycle.

53. Diabetes, which is also closely connected to oral health, is particularly common within the Medicaid population. In 2011, DOH found that the prevalence of adult diabetes in New York has steadily increased. *Adult Diabetes Prevalence in New York State*, New York State Dept. of Health (2011).[2] The study found that adults with annual household incomes of less than $15,000 were nearly three times as likely to report having diabetes as adults with an annual household income of more than $50,000.

54. Diabetes patients can experience impaired and delayed wound healing in the mouth and have an increased incidence and severity of infections.

55. Individuals with diabetes are at much higher risk for gum disease than non-diabetic individuals. In turn, gum disease and the resulting tooth loss threaten diabetic individuals' overall health, increasing the risk of non-oral, diabetes-related complications. For example, diabetic individuals with severe gum disease are far more likely to suffer end-stage renal disease and kidney failure than diabetic individuals without severe gum disease.

**Plaintiff Ciaramella**

56. Frank Ciaramella is a 57-year-old, Medicaid recipient living in Staten Island, New York.

57. Mr. Ciaramella qualifies for Medicaid as "categorically needy."

---

[2] Available at https://www.health.ny.gov/diseases/conditions/diabetes/docs/adult_diabetes_prevalence.pdf.

58. Mr. Ciaramella suffers from end stage renal disease. He has received dialysis treatment three times a week since 2014. He is on the wait list for a kidney transplant.

59. Mr. Ciaramella also suffers from hypertension, coronary artery disease, diabetes mellitus, and has been diagnosed as protein malnourished with low albumin levels.

60. Prior to January 2015, Mr. Ciaramella had several of his teeth extracted. In January 2015, Mr. Ciaramella's dentist removed all of his remaining teeth. As a result, Mr. Ciaramella has no teeth.

61. In 2016, he was fitted for and received upper and lower dentures. Although his upper dentures fit well, the lower dentures do not and cause him substantial discomfort. On one occasion, the dentures slid back in his mouth while he was eating, choking him. Mr. Ciaramella's lower dentures are effectively unusable, forcing him to abandon them completely.

62. In addition, Mr. Ciaramella's upper dentures recently fell out of his mouth and were destroyed when a car ran over them. Under the Program's rules Mr. Ciaramella is not eligible for replacement upper dentures until 2024.

63. Mr. Ciaramella's dental needs are inextricably related to his medical conditions. Mr. Ciaramella must be able to chew high-fiber foods in order to treat his low albumin levels. Because he is not able to do so, he is protein malnourished, leaving him more susceptible to disease. His renal condition limits his ability to intake fluids and calcium, which prevents him from subsisting on protein shakes.

64. Upon information and belief Mr. Ciaramella's weakened immune system, by increasing his susceptibility to diseases, increases his risk of being hospitalized and/or institutionalized.

65. His lack of teeth also cause Mr. Ciaramella emotional harm. He is embarrassed to go out in public and feels sad and anxious.

66. Given the failure of his dentures and the critical importance of being able to follow his prescribed diet, Mr. Ciaramella sought treatment from an oral surgeon, who determined that he does not have enough bone support for dentures and requires two dental implants to hold his dentures in place.

67. Mr. Ciaramella applied for Medicaid coverage of dental implants.

68. Despite New York providing coverage for dental implants for some Medicaid recipients, Mr. Ciaramella's request was denied on August 12, 2016. The reasons given for the denial were that the service was not covered and is not billable after placement of dentures.

69. Dental implants, which would allow him to safely wear a bottom denture, are medically necessary for Mr. Ciaramella and would address his other serious health conditions. New York's denial of such care has trapped him in a cycle of poor health.

70. Denial of Medicaid coverage for Mr. Ciaramella's dental implants violates the Medicaid Act, the ADA, and the Rehabilitation Act.

71. Defendant's promulgation and enforcement of policies excluding dental implants from Medicaid coverage violates the Medicaid Act's Availability and Comparability Provisions, the ADA, and the Rehabilitation Act.

72. In addition, Mr. Ciaramella was denied coverage for a new pair of upper dentures because he received his last dentures fewer than eight years ago.

73. Denial of Medicaid coverage for Mr. Ciaramella's upper dentures violates the Medicaid Act's Availability and Reasonable Promptness Provisions.

### Plaintiff Palazzolo

74. Richard Palazzolo is a 60-year-old Medicaid recipient.

75. He suffers from a number of medical and mental health conditions including bipolar disorder, depression, and diabetes.

76. Mr. Palazzolo lived with his father from approximately 1985 until his death in 2015. After his father's passing, Mr. Palazzolo briefly moved in with relatives, before relocating to a homeless shelter in 2016. In 2017, he moved from the shelter into supportive housing in Suffolk County for individuals with mental health conditions. Mr. Palazzolo lives with approximately three other residents.

77. In 2016, New York Medicaid provided Mr. Palazzolo with partial lower dentures.

78. One day in 2017, when Mr. Palazzolo returned to his room in supportive housing, he found that several items, including his mother's bracelet and his dentures, had been stolen.

79. In June 2017 Mr. Palazzolo's dentist requested prior authorization for a replacement partial lower denture for him. This request was denied on the grounds that the service is available under the Program only once every eight years.

80. Mr. Palazzolo requested an administrative fair hearing to challenge this denial. A fair hearing decision was issued in January 2018, upholding the denial for replacement partial lower dentures.

81. Without lower teeth, it is very difficult for Mr. Palazzolo to chew. His diet is limited to soft foods such as pasta.

82. His lack of teeth also exacerbates Mr. Palazzolo's depression. He finds it harder to go outside and says he feels ugly.

83. Replacement dentures are medically necessary for Richard Palazzolo. Denial of Medicaid coverage for Mr. Palazzolo's replacement dentures violates the Medicaid Act's Availability and Reasonable Promptness Provisions.

### FIRST CLAIM FOR RELIEF

84. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 83 above.

85. Defendant's categorical exclusion of dental implants and exclusion of replacement dentures within eight years from Medicaid coverage of existing dentures violates the Availability Provision of the Medicaid Act, 42 U.S.C. § 1396a(a)(10)(A), and its implementing regulations, which are enforceable by Plaintiffs pursuant to 42 U.S.C. § 1983.

### SECOND CLAIM FOR RELIEF

86. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 85 above.

87. Defendant's provision of dental implants to certain medically and categorically needy individuals, but not to others, violates the Comparability Provision of the Medicaid Act, 42 U.S.C. § 1396a(a)(10)(B)(i)-(ii), and its implementing regulations, which are enforceable by Plaintiffs pursuant to 42 U.S.C. § 1983.

### THIRD CLAIM FOR RELIEF

88. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 87 above.

89. Defendant's unreasonable waiting period for certain dental services, including replacement dentures, violates the Reasonable Promptness Provision of the Medicaid Act, 42

U.S.C. § 1396a(8), and its implementing regulations, which are enforceable by Plaintiffs pursuant to 42 U.S.C. § 1983.

### FOURTH CLAIM FOR RELIEF

90. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 89 above.

91. Defendant's provision of certain dental implants to certain disabled individuals but not to others violates the ADA, 42 U.S.C. § 12132, and its implementing regulations, which are enforceable by Plaintiffs pursuant to 42 U.S.C. § 1983.

### FIFTH CLAIM FOR RELIEF

92. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 91 above.

93. Defendant's provision of dental implants to certain disabled individuals but not to others violates the Rehabilitation Act, 29 U.S.C. § 794(a), and its implementing regulations, which are enforceable by Plaintiffs pursuant to 42 U.S.C. § 1983.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Issue a permanent injunction pursuant to 42 U.S.C. § 1983 and the Court's inherent power:

   i. ordering Defendant Zucker to provide Plaintiffs with coverage for medically necessary dental services;

   ii. enjoining Defendant Zucker from denying medically necessary dental coverage to Medicaid-eligible individuals;

    iii.    ordering Defendant Zucker to update the New York State Medicaid Program Dental Policy and Procedures Code Manual to remove the categorical ban on dental implants;

    iv.    ordering Defendant Zucker to update the New York State Medicaid Program Dental Policy and Procedures Code Manual to provide all medically necessary dental coverage within a reasonable time period; and

    v.    ordering Defendant Zucker to issue an Informational Letter ("INF") informing local social services districts and Medicaid managed care plans of the coverage changes in paragraphs (iii) and (iv) above;

B. Enter a declaratory judgment declaring that:

    i.    Defendant's exclusion from the scope of Medicaid coverage of certain types of medically necessary dental services violates the Medicaid Act, which is enforceable pursuant to 42 U.S.C. § 1983;

    ii.    Defendant's exclusion from the scope of Medicaid coverage certain types of medically necessary dental services for some disabled individuals but not others violates the ADA and the Rehabilitation Act, which is enforceable pursuant to 42 U.S.C. § 1983.

C. Award Plaintiffs costs and disbursements, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988; and

D. Award Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: August 2, 2018
New York, New York

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP
By: /s/ Mary Eaton
Wesley R. Powell, Esq.
Mary Eaton, Esq.
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000

THE LEGAL AID SOCIETY
Judith Goldiner, Esq.
Belkys Garcia, Esq.
Jennifer Levy, Esq.
199 Water Street
New York, NY 10038
Tel: (212) 577-3300

*Attorneys for Plaintiffs*