UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANK CIARAMELLA, *et al.*, *on behalf of themselves and all others similarly situated*,

Plaintiffs,

-v-

HOWARD ZUCKER, *as Commissioner of the Department of Health*,

Defendant.

18-CV-6945 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs Frank Ciaramella, Richard Palazzolo, Lillian Velazquez, AnneMarie Walker, Antonio Martin, Christopher Russo, Matthew Adinolfi, and Jody Virtuoso ("Plaintiffs") bring this putative class action under the Medicaid Act, 42 U.S.C. §§ 1396 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, against the Commissioner of the New York State Department of Health. Plaintiffs are Medicaid recipients whose dental services were deemed not reimbursable by New York's Medicaid program because of the program's limits on dental implants, replacement dentures, root canals, and crowns. Plaintiffs have brought this action challenging those denials.

The operative Corrected Amended Complaint was filed on November 1, 2018. (Dkt. No. 71 ("CAC").) Defendant now moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 85.) Plaintiffs have moved for class certification pursuant to Federal Rule of Civil Procedure 23. (Dkt. No. 75.) For the reasons that follow, the motion to dismiss is granted in part and denied in part, and the motion for class certification is granted.

## I.    Background

Title XIX of the Social Security Act of 1965, 42 U.S.C. §§ 1396 *et seq*., created the federal Medicaid program, a federal-state partnership established to provide medical assistance to qualifying residents whose "income and resources are insufficient to meet the costs of necessary medical services."  42 U.S.C. § 1396-1.  While states are not required to participate, if a state opts into the federal Medicaid program, it must comply with federal Medicaid statutes and regulations.  *See* 42 U.S.C. §§ 1396-1, 1396a, 1396c.  Participating states must also designate a state agency to administer or supervise the administration of the state's Medicaid program.  *See* 42 U.S.C. § 1396a(a)(5).  States are not required to offer dental services, but if they choose to do so, that coverage must be provided in accordance with the Medicaid Act and its implementing regulations.  *See* 42 C.F.R. §§ 440.210, .220, .225; *Davis v. Shah*, 821 F.3d 231, 239 (2d Cir. 2016) ("The Medicaid Act imposes several requirements on the administration of both required and optional services under a state plan.").  However, states are permitted to "place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures."  42 C.F.R. § 440.230(d).

New York State has opted into the federal Medicaid program and has designated the New York State Department of Health ("DOH") as the administrator of New York's Medicaid program ("New York Medicaid").  (CAC ¶¶ 40, 43.)  As part of its program, New York has opted to provide dental services to Medicaid recipients.  (CAC ¶ 41 (citing N.Y. Soc. Serv. L. § 365-a).)

The specific rules governing the circumstances under which New York Medicaid will cover dental services are set forth in the New York State Medicaid Program Dental Policy and Procedure Code Manual ("Manual").  (CAC ¶ 51.)  There are two versions of the Manual that are the subject of this dispute.  This action was originally brought on August 2, 2018.  (Dkt. No. 1.)

On September 11, 2018, DOH announced that it had revised the Manual's restrictions on dental implants and replacement dentures effective November 12, 2018.  (CAC ¶ 66.)  The Corrected Amended Complaint was filed on November 1, 2018, eleven days before the new Manual became effective.  (*See* CAC.)

Plaintiffs challenge New York Medicaid's coverage restrictions regarding dental implants, replacement dentures, root canals, and crowns.  (CAC ¶ 1.)

A.      **Dental Implants**

Plaintiffs Ciaramella, Adinolfi, and Virtuoso challenge New York Medicaid's restrictions on dental implants.  (*See* CAC ¶¶ 70–87, 132–150.)  At the time the Corrected Amended Complaint was filed, the Manual excluded coverage for dental implants and related services.  (CAC ¶ 53; Dkt. No. 86 at 5 n.2.)  Based on published procedure codes, Plaintiffs noted that implants were covered in certain limited circumstances despite the categorical ban in the Manual.  (*See* CAC ¶ 54.)  However, the current version of the Manual, which became effective on November 12, 2018, loosens these restrictions on dental implants.  The operative policy covers dental implants "when medically necessary" and requires supporting documentation from both a physician and a dentist.  (Dkt. No. 87-2 at 2.)  A physician "must explain how implants will alleviate the patient's medical condition," and a dentist "must explain why other covered functional alternatives for prosthetic replacement will not correct the patient's dental condition and why the patient requires implants."  (*Id.*)

Plaintiffs Ciaramella, Adinolfi, and Virtuoso have alleged that despite needing dental implants in order to secure dentures in place, they are not eligible for Medicaid coverage of those implants.  (CAC ¶¶ 80–82, 139, 149.)  While the denials alleged in the complaint took place prior to the current version of the Manual taking effect, Plaintiffs Adinolfi and Virtuoso also

3

allege that they would not be eligible for implants under the revised Manual. (*See* CAC ¶¶ 139, 149.)

**B.    Replacement Dentures**

Plaintiffs Ciaramella, Palazzolo, Martin, Russo, and Virtuoso challenge New York Medicaid's restrictions on replacement dentures. (CAC ¶¶ 70–97, 117–131, 141–150.) At the time that the Corrected Amended Complaint was filed, the Manual provided that dentures would not be replaced for a minimum of eight years "from the initial placement" unless the dentures became "unserviceable through trauma, disease or physiological change." (CAC ¶ 56.) Requests for replacement dentures prior to the eight-year minimum would not be reviewed without "supporting documentation of medical necessity," and lost, stolen or broken dentures would not be replaced unless the applicant had "a serious health condition that ha[d] been verified and documented." (*Id.*)

The operative Manual now states that dentures "whether unserviceable, lost, stolen or broken" will not be replaced for a minimum of eight years from initial placement unless they are "determined medically necessary by the Department or its agent." (Dkt. No. 86 at 6.) Further, a letter from both the physician and the dentist is required. (*Id.*) The physician's letter "must explain how dentures would alleviate the patient's serious health condition or improve employability." (*Id.*) The dentist's letter "must explain the specific circumstances that necessitates [sic] replacement of the denture." (*Id.*) This new standard withdraws the authorization of replacement dentures whenever they become "unserviceable through trauma, disease or physiological change." (CAC ¶ 67.) And it imposes a new requirement that a physician demonstrate how a patient's serious health condition would be alleviated, or employability improved, by dentures. (*Id.*)

Plaintiffs Ciaramella, Palazzolo, Martin, Russo, and Virtuoso have alleged that despite needing new dentures, they are not eligible for Medicaid coverage for their replacements. (CAC ¶¶ 76, 81–82, 92–94, 120–125, 129–131, 143–145, 149.)  The Corrected Amended Complaint alleges that the new standard "impose[s] a more stringent burden on Medicaid recipients whose dentures have become unserviceable through disease or trauma."  (CAC ¶ 67.) Although the denials took place under the previous denture policy, Plaintiffs Martin, Russo, and Virtuoso specifically allege that they would not be eligible for replacement dentures under the now-operative denture policy.  (CAC ¶¶ 125, 131, 149.)

### C.      Root Canals

Plaintiffs Velazquez and Walker bring suit challenging New York Medicaid's restrictions on root canals.  (CAC ¶ 98–116.)  The Manual excludes from coverage "molar root canal therapy for individuals 21 years of age and older, except when extraction would be medically contraindicated or the tooth is a critical abutment for an existing serviceable prosthesis."  (CAC ¶ 58, Dkt. No. 86 at 6 n.4.)  When a Medicaid patient 21 years or older does not fall into one of these two exceptions, the tooth will be pulled rather than providing a root canal to preserve the tooth.  (CAC ¶ 58.)

Another relevant provision is the "8 points of contact" rule.  (CAC ¶ 57.)  The 8 points of contact rule states:

> Eight (8) posterior natural or prosthetic teeth (molars and/or bicuspids) in occlusion (four (4) maxillary and four (4) mandibular teeth in functional contact with each other) will be considered adequate for functional purposes.  Requests will be reviewed for necessity based upon the presence/absence of eight (8) points of natural or prosthetic occlusal contact in the mouth (bicuspid/molar contact).

(Dkt. No. 91-1 at 12; CAC ¶ 57.)  The human adult mouth contains 32 teeth: 12 anterior teeth and 20 posterior teeth.  (CAC ¶ 51.)  Essentially, the 8 points of contact rule means that four pairs of posterior teeth (four maxillary and four mandibular) that are in contact with each other

will be considered functional. If a Medicaid patient will still have eight points of contact if a tooth is extracted, and the patient does not fall into either of the categories of exceptions, the tooth will be pulled. (*See* CAC ¶ 105.)

Plaintiffs Velazquez and Walker have alleged that despite their dentists' requests for root canals, New York Medicaid has denied coverage. (CAC ¶¶ 102–103, 114.) Instead, under the Manual, the problem teeth must be extracted for patients to receive coverage. (CAC ¶¶ 105, 114.)

### D. Crowns

Plaintiff Walker brings suit challenging New York Medicaid's restrictions on crowns. (CAC ¶¶ 109–116.) The Manual states that "[c]rowns will not be routinely approved for a molar tooth in those members age 21 and over which has been endodontically treated without prior approval from the Department of Health." (CAC ¶ 59.) The crown policy further states that coverage for crowns will be excluded "in association with an existing or proposed prosthesis in the same arch, unless the tooth is a critical abutment for a prosthesis provided through the NYS Medicaid program, or unless replacement by addition to an existing prosthesis or new prosthesis is not feasible." (CAC ¶ 60.) This policy often results in denials of crown coverage when the patient needs both dentures and crowns. (*Id.*)

Plaintiff Walker alleges that she needs both a root canal and crowns, which resulted in a denial of her coverage for crowns in favor of extraction of her two front teeth. (CAC ¶¶ 114–115.) Walker was approved for partial upper and lower dentures, so if the two front teeth are extracted, they would then be added to the approved partial upper denture. (CAC ¶ 114.)

## II. Motion to Dismiss

DOH moves to dismiss the Corrected Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 85.)

## A. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires courts to dismiss a case for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (quoting *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009)). When resolving a motion to dismiss pursuant to Rule 12(b)(1), district courts "may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Federal Rule of Civil Procedure 12(b)(6) requires courts to dismiss a case for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the complaint's factual allegations as true and draw all inferences in the plaintiff's favor. *See Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006) (citation omitted). However, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B. Discussion

DOH makes several arguments in support of its motion to dismiss. First, it argues that Plaintiffs' implant policy claims were mooted by the new Manual. Second, it argues that Plaintiff Palazzolo's claims are moot. Third, it argues that Plaintiffs fail to state a claim under the Availability Provision or Reasonable Promptness Provisions of the Medicaid Act, 42 U.S.C. §§ 1396 *et seq.*, the ADA, 42 U.S.C. § 12132, or the RA, 29 U.S.C. § 794(a). Finally, it argues that Plaintiffs' claims are barred by the Eleventh Amendment. The Court addresses each of these grounds in turn.

### 1.    Mootness and Standing

DOH argues that because it has voluntarily changed its dental implants policy guidance, Plaintiffs' claims under the old policy are moot.  "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Tann v. Bennett*, 807 F.3d 51, 52 (2d Cir. 2015) (internal quotation marks and citations omitted).  Mootness "deprives the court of subject matter jurisdiction." *Fox v. Bd. of Trs. of State Univ. of N.Y.,* 42 F.3d 135, 140 (2d Cir. 1994).

A defendant's voluntary cessation of a challenged policy does not "ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed."  *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012).  To overcome that presumption and show that a case is moot under the voluntary cessation doctrine, the defendant bears the "formidable burden of showing that it is *absolutely clear* the allegedly wrongful behavior could not be reasonably expected to recur." *Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 603–04 (2d Cir. 2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

To show that a voluntary cessation of challenged conduct renders a case moot, a defendant must demonstrate that (1) the "challenged conduct has, in fact, ceased," (2) "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur," and (3) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Am. Freedom Def. Initiative v. MTA*, 815 F.3d 105, 109 (2d Cir. 2016) (internal citations and quotation marks omitted).  This Court is unpersuaded that DOH has sufficiently demonstrated that its voluntary revision of its dental implants policy moots Plaintiffs' dental implants claims.

As an initial matter, the conduct has undisputedly ceased. The operative dental implants policy was revised on September 11, 2018, and became effective on November 12, 2018. (Dkt. No. 86 at 5 n.2.) The pre-November 12, 2018 implants policy provided: "[Dental i]mplants and all related services are considered beyond the scope of the NYS Medicaid program." (*Id.*; *see* CAC ¶ 53.) The new policy covers dental implants "when medically necessary," and requires "supporting documentation from the patient's physician and dentist." (Dkt. No. 87-2 at 2.) Whatever Plaintiffs' objection to the strictures of the new policy (*see* Dkt. No. 90 at 3), there is no longer a "categorical ban" on dental implants as alleged in the Corrected Amended Complaint. (*See* CAC ¶ 3.)

However, it cannot "be said with assurance that there is no reasonable expectation that the alleged violation will recur." *Am. Freedom Def. Initiative*, 815 F.3d at 109. DOH argues that it is entitled to deference to its representations that the conduct has ended because it is a government entity, as opposed to a private defendant. (*See* Dkt. No. 86 at 11.) It is true that such representations from administrative agencies are entitled to some deference. *See Am. Freedom Def. Initiative*, 815 F.3d at 110. But, "some deference does not equal unquestioned acceptance." *Mhany Mgmt., Inc.*, 819 F.3d at 604. The representations that have received such deference are ones where there has been an unambiguous public commitment to maintain the new policy. *See, e.g.*, *Am. Freedom Def. Initiative*, 815 F.3d at 110 (noting that the MTA made representations in its briefing and at oral argument that it would not reinstate the challenged policy); *Bryant v. City of New York,* No. 14 Civ. 8672, 2016 WL 3766390, at *4 (S.D.N.Y. July 8, 2016) (noting city officials' "pronouncement of commitment to the new rule"); *Inside Connect, Inc. v. Fischer*, No. 13 Civ. 1138, 2014 WL 2933221, at *8 (S.D.N.Y. June 30, 2014) (noting that the agency had made a "public commitment" to new policy); *Rivers v. Doar*, 638 F.

Supp. 2d 333, 338 (E.D.N.Y. 2009) ("Defendants have made a visible public commitment before plaintiffs, the state legislature and the New York public to maintain the [corrective policy].")

Here, there has been no such public commitment to the new rule. DOH has certainly expended resources to announce and implement the new dental implants policy. (*See* Dkt. No. 86 at 10–11; Dkt. No. 96 at 2.) However, DOH has not made any commitment that it will not return to their original pre-November 12, 2018, implant policy excluding dental implants from coverage. (CAC ¶ 69 ("DOH has supplied no express guarantee that that the changes contained therein will be maintained permanently.").) Instead, DOH has only stated that "there is no reasonable expectation that DOH will resume the challenged conduct." (Dkt. No. 86 at 11.) Courts have recently declined to defer to similar statements. For example, in *NRDC v. United States Department of Energy*, the Court refused to moot Plaintiffs claims in part because the Department of Energy had "not categorially stated" that it would not revert to the challenged policy, "but only that 'there [was] no reasonable expectation' that it [would].'" 362 F. Supp. 3d 126, 138 (S.D.N.Y. 2019).

Without an unequivocal commitment that it does not intend to reinstate the pre-November 12, 2018, dental implants policy, DOH cannot have met its "formidable burden of showing that it is *absolutely clear* the allegedly wrongful behavior could not be reasonably expected to occur." *Mhany Mgmt., Inc*, 819 F.3d at 603–04 (quoting *Friends of the Earth, Inc.*, 528 U.S. at 190). Thus, Plaintiffs' claims challenging the pre-November 12, 2018 implants policy are not mooted.

In their complaint, Plaintiffs also challenge the new implants policy. (*See* CAC ¶¶ 139, 149, 154, 158, 162, 166, 170.) However, DOH has not moved to dismiss those claims on this ground. (*See* Dkt. Nos. 85, 86 at 14–23.) While Plaintiff Adinolfi and Plaintiff Virtuoso both

allege that they would not qualify for dental implants under the new policy (CAC ¶¶ 139, 149), as of the filing of the complaint neither had yet been denied coverage for dental implants pursuant to that new policy because the complaint was filed eleven days before it became effective. (*See* CAC ¶ 69.)[1] In its reply brief, DOH for the first time raised the argument that Plaintiffs do not have standing to challenge the new Manual. (*See* Dkt. No. 96 at 8–9.)

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Whether or not it is raised, courts have an independent obligation to determine whether Article III standing exists. *See Thompson v. Cty. of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994). As an initial matter, standing requires an "injury in fact," that is, "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (internal quotation marks and citations omitted). The plaintiff bears the burden of establishing that Article III standing exists. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Here, it is unclear if Adinolfi and Virtuoso's claims under the new policy are based on an alleged injury in fact for the purposes of Article III standing. *Cf. Doe v. Blum*, 729 F.2d 186, 189 (2d Cir. 1984) ("None of the plaintiffs alleges that she requested and was denied family planning services for want of a Medicaid identification card. Consequently, none has standing to assert . . . the statutory claim that New York fails to adequately provide those services.") It is true that

---

[1] There is also a standing issue with respect to the operative denture policy, for the same reasons explored here. Accordingly, claims regarding the operative denture policy are dismissed without prejudice. However, since the pre-November 12, 2018, and operative denture policy are so similar, the relevant portions have not substantially changed. To the extent that Plaintiffs mount a challenge to the operative denture policy, they may amend their complaint to incorporate subsequent denials under the new policy.

courts generally excuse failure to submit to a policy "where a plaintiff makes a substantial showing that application for the benefit . . . would have been futile." *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997). However, it is not clear on the face of the complaint whether requesting coverage for dental implants pursuant to the new policy is a futile gesture. Because Plaintiffs bear the burden of demonstrating that Article III standing exists, Plaintiffs' dental implants claims based on the operative Manual are dismissed without prejudice.

Because of the time that has elapsed between the filing of the complaint and this Court's opinion, it is likely that Adinolfi, Virtuoso, or some other Medicaid recipient has applied for dental implants and has been denied coverage. Federal Rule of Civil Procedure 15(a)(2) directs courts to "freely give leave [to amend] when justice so requires." Consequently, Plaintiffs may amend the complaint to cure any standing issues if they wish to mount a challenge to the current dental implants policy.

### 2. Plaintiff Palazzolo's Claims

"A case or controversy becomes moot . . . when the injury is healed and only prospective relief has been sought." *Fund for Animals v. Babbitt*, 89 F.3d 128, 133 (2d Cir. 1996). DOH argues that because Plaintiff Palazzolo was approved for the replacement dentures sought in the Complaint (*see* Dkt. Nos. 53, 53-1, 55), his claims are moot. (Dkt. No. 86 at 25.) This Court agrees. Because his "injury is healed" and Palazzolo is seeking only prospective relief (*see* CAC at 29–30), he no longer has a "legally cognizable interest in the outcome" of the case. *See Fund for Animals,* 89 F.3d at 132–33 (citation omitted).

Plaintiffs argue that this Court should hold that Palazzolo's claims are not moot because they are "inherently transitory" and "relate back" to the filing of the complaint. (Dkt. No. 90 at 19.) However, to qualify for this exception it must be true that "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to

certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Salazar v. King*, 822 F.3d 61, 73 (2d Cir. 2016) (citation omitted). Palazzolo alleges that the denial of his "medically necessary" replacement dentures violates federal law. (*See* CAC ¶ 97.) However, ineligibility for replacement dentures is not a condition where it is uncertain that a claim could remain live for very long. Indeed, because it is alleged in the complaint that at least one Plaintiff will not be eligible for replacement dentures for another six years (*see* CAC ¶ 124), on the face of the complaint there are Plaintiffs who expect that their "claim will remain live . . . long enough for a court to certify the class." *See Salazar*, 822 F.3d at 73. Further, because Plaintiffs Ciaramella, Martin, Russo, and Virtuoso all remain in the lawsuit, Plaintiffs' denture policy challenge is not defeated by the mootness of Palazzolo's claims. *See Robinson v. Sheet Metal Workers' Nat. Pension Fund, Plan A,* 515 F.3d 93, 97 n.4 (2d Cir. 2008).

### 3. Availability Provision Claims

DOH argues that Plaintiffs fail to state a claim that the denture policy, root canal policy, and crown policy violate the Availability Provision of the Medicaid Act.[2] Under the Availability Provision of the Medicaid Act, a State plan "must provide for making medical assistance available to all categorically needy individuals, including at least certain enumerated types of care and services." *Cruz v. Zucker*, 195 F. Supp. 3d 554, 570 (S.D.N.Y. 2016) (citing 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)) (alterations and quotation marks omitted). When interpreting the reach of the Availability Provision, its implementing regulations provide some guidance. Most relevantly, "[e]ach service must be sufficient in amount, duration, and scope to reasonably

---

[2] Plaintiffs allege that the pre-November 12, 2018, implants policy also violates the Availability Provision. (CAC ¶¶ 85, 140, 150.) Because Defendants have not moved to dismiss those claims, they survive.

achieve its purpose."  42 C.F.R. § 440.230(b).  And though "[t]he agency may place appropriate limits on a service based on . . . medical necessity or on utilization control procedures," it "may not arbitrarily deny or reduce the amount, duration, or scope of a required service . . . solely because of the diagnosis, type of illness, or condition."  42 C.F.R. § 440.230(c)–(d).

In *Cruz v. Zucker*, the court assessed the legal landscape and adopted a "never-say-never" rule for interpreting the Availability Provision that prohibits a "categorical ban on medically necessary treatment for a specific diagnosis."  195 F. Supp. 3d at 571.  However, the Availability Provision does allow the state "to say 'only sometimes' and to limit the coverage of specific treatments when the state has good reasons for doing so — reasons that ultimately uphold the provision of necessary medical care to needy individuals."  *Id.*  This Court adopts the framework set forth in *Cruz*, and concludes that the Plaintiffs have alleged enough facts to state a claim that the denture policy, root canal policy, and crown policy violate the Availability Provision.

### a.    Denture Policy

In relevant part, the pre-November 12, 2018 denture policy requires that applicants seeking replacement dentures fewer than eight years after their initial placement must have "supporting documentation of medical necessity."  (CAC ¶ 56.)  If the applicant's dentures were lost, stolen, or broken, they would not be replaced "unless there exists a serious health condition that has been verified and documented."  (*Id.*)  The operative denture policy states that dentures that become "unserviceable, lost, stolen, or broken" within eight years from initial placement can be replaced when "determined medically necessary by the Department or its agent."  (CAC ¶ 67; Dkt. No. 86 at 6.)  To help make that determination, New York Medicaid requires a letter from a physician to show "how dentures would alleviate the patient's serious health condition or improve employability."  (*Id.*)

Plaintiffs Martin, Russo, and Virtuoso explicitly allege that they are not currently being treated for a separate serious health condition that would be alleviated by dentures. (*See* CAC ¶¶ 125, 131, 149.) It is implied that Plaintiff Ciaramella is also not able to demonstrate that he has another serious health condition that would qualify him for replacement dentures, as the Complaint alleges that he was denied new upper dentures because he was seeking replacements sooner than eight years after the initial placement. (*See* CAC ¶ 86.) Drawing all inferences in the Plaintiffs' favor, they allege in substance that Medicaid recipients must demonstrate a medical condition other than the baseline medical necessity that comes with needing dentures — even if the applicant is edentulous, like Ciaramella. Because of the similarity between the pre-November 12, 2018 and operative denture policies, Plaintiffs would presumably be unable to access replacement dentures under either regime.[3]

DOH argues that the substance of its utilization controls cannot be challenged by Plaintiffs, because prior cases have held there is no private right of action pursuant to either Section 30(A) of the Medicaid Act or the Reasonable Standards Provision. (Dkt. No. 86 at 17.) But this argument is irrelevant because Plaintiffs do not make a claim under either of these provisions.

States are certainly allowed to restrict coverage based either on medical necessity or utilization controls. *See* 42 C.F.R. § 440.230(d). However, those restrictions are subject to the limits imposed by the Availability Provision and its implementing regulations. The denture policy is not an impermissible categorical ban under the Availability Provision. *See* 195 F. Supp. 3d at 571. However, the Availability Provision requires that all state limitations on coverage

---

[3] To be clear, if Plaintiffs intend to mount a challenge to the operative denture policy, they must amend their complaint to show standing. *See supra* note 2.

must be premised on "good reasons . . . that ultimately uphold the provision of necessary medical care to needy individuals." *Id.* If a restriction is based on medical necessity, courts can engage in a factual determination of whether a treatment is medically necessary, as was done in *Cruz. See* 195 F. Supp. 3d at 573–76. Courts are also capable of assessing proffered reasons for restrictions on coverage to determine whether "any limiting criteria other than medical necessity . . . ultimately serve[s] the broader aim of 'assuring that individuals will receive necessary medical care.'" *Id.* at 571 (quoting *Alexander v. Choate*, 469 U.S. 287, 303 (1985)).

To the extent that New York Medicaid requires evidence of an *additional* medical condition to cover replacement dentures within an eight-year window regardless of the applicant's need for them, Plaintiffs' denials could be "solely because of the diagnosis, type of illness, or condition" in contravention of the Availability Provision. *See* 42 C.F.R. § 440.230(c). Whether it is accurate that the requirement of an additional medical condition is the sole reason for the denial or whether the denture policy is an "appropriate limit" based either on medical necessity or on proper utilization control procedures is a question of fact that must be informed by discovery. At the motion to dismiss stage, however, with all inferences drawn in their favor, Plaintiffs have stated a claim that the denture policy violates the Availability Provision.

### b. Root Canal Policy

The root canal policy excludes from Medicaid coverage "molar root canal therapy for individuals 21 years of age and older, except when extraction would be medically contraindicated or the tooth is a critical abutment for an existing serviceable prosthesis." (CAC ¶ 58.) Also relevant is the "8 points of contact rule," which considers eight posterior teeth in occlusion adequate for functional purposes. (CAC ¶ 56.) Plaintiffs allege that these two policies result in teeth being extracted rather than saved through a root canal, despite the fact that "[f]or

many years, the standard in dentistry has been to save a natural tooth with a root canal over extraction when possible." (CAC ¶ 58.) Drawing all inferences in favor of the Plaintiffs, the Court concludes that Plaintiffs are challenging the root canal policy as one that is neither a restriction based in medical necessity nor a reasonable utilization control for the purposes of the Availability Provision.

Whether Plaintiffs are correct about that professional standard, or whether the root canal policy appropriately restricts coverage based on medical necessity, is a question of fact. And as discussed, proper utilization controls must be adopted for "good reasons . . . that ultimately uphold the provision of necessary medical care to needy individuals." *Cruz*, 195 F. Supp. 3d at 571. The adequacy of those reasons is also a question of fact to be assessed at a later stage of the litigation. Consequently, Plaintiffs have adequately stated a claim that the root canal policy violates the Availability Provision.

### c.      Crown Policy

The crown policy states that "[c]rowns will not routinely be approved for a molar tooth in those members age 21 and over which has been endodontically treated without prior approval from the Department of Health." (CAC ¶ 59 (alteration in original).) It also excludes coverage for crowns "in association with an existing or proposed prosthesis in the same arch, unless the tooth is a critical abutment for a prosthesis . . . , or unless replacement by addition to an existing prosthesis or new prosthesis is not feasible." (CAC ¶ 60.) These provisions result in denials when an applicant needs both crowns and a root canal, or both crowns and dentures. (CAC ¶¶ 59–60.)

To the extent that New York Medicaid excludes crowns from coverage when the applicant needs both crowns and dentures or both crowns and a root canal, denials resulting from

that policy could be "solely because of the diagnosis, type of illness, or condition" in contravention of the Availability Provision. *See* 42 C.F.R. § 440.230(c). Whether the crown policy indeed violates the Availability Provision, or is a proper restriction based on medical necessity or proper utilization controls, presents a question of fact. At this stage, the Plaintiffs have adequately stated a claim that the crown policy violates the Availability Provision.

### 4. Reasonable Promptness Provision Claims

DOH argues that Plaintiffs fail to state a claim that the denture policy violates the Reasonable Promptness Provision of the Medicaid Act. (*See* Dkt. No. 86 at 18–20.) The Reasonable Promptness Provision states that "all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and[] such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). Although Plaintiffs do not point to the violation of any particular regulation in support of their Reasonable Promptness Provision claim, "the regulations further define the contours of the statutory right to reasonably prompt provision of assistance." *Doe v. Chiles*, 136 F.3d 709, 717 (11th Cir. 1998). Most relevantly, states are required to "[f]urnish Medicaid promptly to beneficiaries without any delay caused by the agency's administrative procedures." 42 C.F.R. § 435.930(a).

Courts have generally held defendants in violation of Reasonable Promptness Provision where there has been a waitlist formed of individuals already determined to be eligible for the service at issue. *See, e.g.*, *Rosie D. v. Romney*, 410 F. Supp. 2d 18, 27 (D. Mass. 2006) ("[C]ourts facing this question have found defendants in violation of this provision when eligible individuals are placed on waiting lists for medically necessary services."); *Sobky v. Smoley*, 855 F. Supp. 1123, 1149 (E.D. Cal. 1994) (noting that the Reasonable Promptness Provision

"prohibits states from responding to budgetary constraints in such a way as to cause otherwise eligible recipients to be placed on waiting lists.").

Plaintiffs argue that the denture policy's presumptive eight-year waiting period for replacement dentures in both the prior and operative versions of the Manual is not "reasonably prompt" and therefore violates federal law. (*See* Dkt. No. 90 at 13–14.) However, this situation is fundamentally unlike prior cases because the eight-year waiting period is part of the eligibility criteria for replacement dentures. (*See* CAC ¶ 56 (noting that, in relevant part, the pre-November 12, 2018, dental policy provided that "[c]omplete dentures and partial dentures will not be replaced for a minimum of eight (8) years from initial placement except where they become unserviceable through trauma, disease, or extensive physiological change."); Dkt. No. 87-2 at 2 (noting that the operative policy provides that "[c]omplete dentures and partial dentures whether unserviceable, lost, stolen, or broken will not be replaced for a minimum of eight years from initial placement except when determined medically necessary by the Department or its agent.").) This Court has not found, nor have Plaintiffs pointed to, any case that suggests that the Reasonable Promptness Provision is applicable in this context.

The Reasonable Promptness Provision prohibits undue delay in furnishing Medicaid benefits to "all *eligible* individuals." 42 U.S.C. § 1396a(a)(8) (emphasis added). This particular provision, then, does not address the content of the eligibility criteria. It only requires that once an individual becomes eligible, there cannot be an unreasonably long wait to acquire covered care. This not to say that there are no limits to eligibility criteria under federal Medicaid law, but only that those questions are not answered by the Reasonable Promptness Provision. *Cf. supra* Section I.B.3.

The Reasonable Promptness Provision is intended to ensure that the state acts in a timely manner in determining eligibility for services and providing those services to eligible individuals.  However reasonable or unreasonable the eight-year presumptive wait period is, the fact that there is a period of time for which a Medicaid-eligible individual must make an enhanced showing of necessity to qualify for replacement dentures does not state a claim under the Reasonable Promptness Provision.  Consequently, the Reasonable Promptness Provision claims must be dismissed.

### 5.    Comparability Provision Claims

Plaintiffs allege that the pre-November 12, 2018, and operative dental implants policy violate the Comparability Provision of the Medicaid Act.  (CAC ¶¶ 85, 140, 150.)  However, DOH has failed to move to dismiss these claims.  (*See* Dkt. No. 85.)  In its reply, DOH argues for the first time that Plaintiffs lack standing to challenge the operative implant policy.  (*See* Dkt. No. 96 at 8–9.)  This Court has addressed the standing issues related to the operative implant policy above.  *See supra* Section I.B.1.  While DOH argues that Plaintiffs' challenge to the prior implant policy is moot, it never addresses the substance of Plaintiffs' claim that the pre-November 12, 2018, dental implants policy violated the Comparability Provision.  (*See* Dkt. Nos. 85, 86.)  Because Plaintiffs' challenge to the prior dental implants policy is not mooted by the new policy, *see supra* Section I.B.1, and because DOH has not moved to dismiss those claims on the merits, they survive.

### 6.    ADA and Rehabilitation Act

DOH argues that Plaintiffs' challenge to the pre-November 12, 2018 dental implants policy does not state a claim under Title II of the ADA or Section 504 of the Rehabilitation Act.  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities

of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a

disability . . . shall, solely by reason of her or his disability, be excluded from the participation in,

be denied the benefits of, or be subjected to discrimination under any program or activity

receiving Federal financial assistance." 29 U.S.C. § 794(a). Courts "treat claims under the two

statutes identically in most cases." *Davis v. Shah*, 821 F.3d 231, 259 (2d Cir. 2016) (internal

quotation marks and citation omitted). To state a claim under the ADA or the Rehabilitation Act,

a plaintiff must establish "(1) that she is a qualified individual with a disability; (2) that she was

excluded from participation in a public entity's services, programs or activities or was otherwise

discriminated against by a public entity; and (3) that such exclusion or discrimination was due to

her disability." *Id.* (citation omitted). In the Second Circuit, a plaintiff may establish all three of

those prongs and "state a valid claim for disability discrimination by demonstrating that the

defendant's actions pose a serious risk of institutionalization for disabled persons." *Id.* at 263. A

"sufficient risk of institutionalization" is established "if a public entity's failure to provide

community services . . . will *likely* cause a decline in health, safety, or welfare that would lead to

the individual's eventual placement in an institution." *Id.* at 262–63 (citation omitted) (alteration

in original).

DOH argues that the dental implants Plaintiffs have failed to establish that due to

Medicaid's policy restricting dental implants, their health would likely decline so much that they

are at risk of institutionalization. (*See* Dkt. No. 86 at 21.) DOH is correct that neither Adinolfi

nor Virtuoso alleges any facts to support the notion that they are at risk of institutionalization

because of their lack of dental implants. (*See* Dkt. No. 86 at 22; CAC ¶¶ 132–50.) Plaintiffs do

not rebut DOH's contention in their opposition, nor do they argue for another theory under which

21

they state a claim pursuant to the ADA and Rehabilitation Act. (*See* Dkt. No. 90 at 15–16.) Adinolfi and Virtuoso's ADA and Rehabilitation Act claims are therefore dismissed.

However, Plaintiff Ciaramella does allege that his "dental needs are inextricably related to his medical conditions," and that his inability to chew high-fiber foods increases his risk of being institutionalized. (CAC ¶¶ 72–73, 77–78.) DOH's objection is one of likelihood, arguing that Ciaramella has not sufficiently alleged that without dental implants he is "*likely*" to experience "a decline in health, safety, or welfare that would lead to [his] eventual placement in an institution." (Dkt. No. 86 at 22 (citing *Davis*, F.3d at 262).) However, this Court agrees with Plaintiffs that the question of likelihood is one of fact. (*See* Dkt. No. 90 at 16.) At the motion to dismiss stage, the Court must accept the complaint's factual allegations as true and draw all inferences in the plaintiff's favor. *Cleveland*, 448 F.3d at 521 (2d Cir. 2006) (citation omitted). When viewed in the light most favorable to Ciaramella, his allegations are sufficient to state a claim under the ADA and Rehabilitation Act as a matter of law. Thus, as to Ciaramella, the claims must survive.

### 7. Eleventh Amendment Defense

Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). New York has not consented to the suit, and thus DOH argues that Plaintiffs' claims are barred by this immunity because they are implied challenges to discrete Medicaid denials under state law. (*See* Dkt. No. 86 at 23–24.) However, Plaintiffs are not challenging their discrete Medicaid denials, but rather contending that the Implants, Denture, Root Canal, and Crown policies set forth in the Manual are themselves more restrictive than federal law allows. (*See* CAC ¶¶ 152, 154, 156, 158, 160, 162, 164, 166, 168, 170.)

Whether a plaintiff's claim clears the Eleventh Amendment's bar against suit is a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation and alterations omitted). Because Plaintiffs seek prospective injunctive and declaratory relief (*see* CAC at 29–30), DOH's argument is without merit.

*      *      *

In sum, Plaintiffs' Reasonable Promptness Provision claim is dismissed, and the ADA and Rehabilitation Act claims are dismissed as to Plaintiff Adinolfi and Virtuoso. Further, Plaintiff Palazzolo's claims are dismissed as moot. Because Plaintiffs have not established standing to challenge the operative implants and denture policies, those claims are dismissed with leave to replead.

### III.   Motion for Class Certification

Plaintiffs have moved for class certification pursuant to Federal Rule of Civil Procedure 23(b)(2), seeking to certify a class consisting of:

> All New York Medicaid-eligible individuals whose expenses associated with medically necessary dental services are not reimbursable by New York Medicaid because of the Program's categorical ban on dental implants and limits on replacement dentures, root canals, and crowns.

(Dkt. No. 76 at 7.) Plaintiffs also ask the Court to appoint Plaintiffs Frank Ciaramella, Richard Palazzolo,[4] Lillian Velazquez, AnneMarie Walker, Antonio Martin, Christopher Russo, Matthew Adinolfi, and Jody Virtuoso as class representatives. (Dkt. No. 76 at 1.) Plaintiffs further

---

[4] As discussed *supra*, Richard Palazzolo's claims are moot, and he will be terminated as a party to this action. Therefore, this Court declines to appoint him as a class representative.

request the appointment of the Legal Aid Society and Willkie Farr & Gallagher LLP as class

counsel.  (Dkt. No. 76 at 17–18.)

### A.    Legal Standard

Class certification is governed by Federal Rule of Civil Procedure 23.  Section (a) of Rule

23 requires the party seeking certification to establish four prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or
> defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the
> class.

Fed. R. Civ. P. 23(a).

In addition, "the movant must show that the action is one of three types described in

section (b)."  *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 159 (S.D.N.Y. 2014).  In particular,

subsection (b)(2) provides that a class action may be maintained if "the party opposing the class

has acted or refused to act on grounds that apply generally to the class, so that final injunctive

relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R.

Civ. P. 23(b)(2).

The Rule 23 requirements are more than a "mere pleading standard."  *Wal-Mart Stores,

Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The party seeking class certification must establish

Rule 23's requirements by a "preponderance of the evidence."  *Teamsters Local 445 Freight Div.

Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).  Courts must "conduct a

rigorous analysis to determine whether a class action is appropriate, considering materials

outside of the pleadings and weighing conflicting evidence as necessary."  *Jackson*, 298 F.R.D.

at 159.

## B.    Discussion

It is clear, and DOH does not dispute, that Plaintiffs satisfy the numerosity and adequacy requirements pursuant to Rules 23(a)(1) and 23(a)(4).[5]  (*See* Dkt. No. 76 at 8–10, 16–18; Dkt. No. 92.)  However, DOH argues that the Plaintiff class should not be certified for four  reasons: that Plaintiffs have failed to establish commonality and typicality, that the proposed class is not reasonably ascertainable, and that the action is not maintainable under Rule 23(b)(2).  (*See* Dkt. No. 92.)  The Court addresses each of these in turn.

### 1.    Commonality

Rule 23(a)(2) mandates that the party seeking class certification demonstrate that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  It is true that "[t]he test for commonality . . . is not demanding and is met so long as there is at least one issue common to the class."  *Brooklyn Ctr. for Indep. of the Disabled*, 290 F.R.D. at 418.  Indeed, "when the plaintiff class seeks to enjoin a practice or policy, rather than individualized relief, commonality is assumed."  *Shepard v. Rhea*, No. 12 Civ. 7220, 2014 WL 5801415, at *4 (S.D.N.Y. Nov. 7, 2014).

DOH's argument boils down to the notion that Medicaid coverage decisions are an individualized endeavor, and therefore there is a lack of commonality between denials of coverage in the putative class.  (*See* Dkt. No. 92 at 11–17.)  However, DOH's argument is

---

[5] Specifically, there is no dispute that there is more than the "40 members" of a class typically considered to satisfy numerosity.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Further, there is no suggestion that the adequacy requirement is not satisfied because the proposed class representatives' "interests are antagonistic to the interest of other members of the class" or any doubt that plaintiffs' "attorneys are qualified, experienced[,] and able to conduct the litigation."  *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 419 (S.D.N.Y. 2012) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

unavailing.  Plaintiffs are not challenging their individual Medicaid denials; rather they are

mounting an argument that the DOH guidance set forth in the Manual does not comport with

federal law.  (*See* Dkt. No. 97 at 2.)  Indeed, while the "process is necessarily individualized to

each [applicant's] needs, plaintiffs do not seek to vindicate individual [applicants'] rights to the

particular . . . [services] they require.  Rather, plaintiffs seek injunctive relief from limitations . . .

on [applicants'] access to . . . [s]ervices overall."  *M.G. v. N.Y.C. Dep't of Educ.*, 162 F. Supp. 3d

216, 236 (S.D.N.Y. 2016) (finding commonality was satisfied).

It is true that Plaintiffs must show that their claims "depend upon a common

contention . . . of such a nature that it is capable of classwide resolution — which means that the

determination of its truth or falsity will resolve an issue that is central to the validity of each one

of the claims in one stroke."  *Wal-Mart Stores, Inc.*, 564 U.S. at 350.  Plaintiffs here have done

so.  Whether the challenged provisions of the Manual facially violate federal law is an issue that

can be resolved "in one stroke."  Commonality is therefore satisfied pursuant to Rule 23(a)(2).

### 2.     Typicality

Rule 23(a)(3) requires that the "claims or defenses of the class representatives are typical

of the of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied

"when each class member's claim arises from the same course of events and each class member

makes similar legal arguments to prove the defendant's liability . . . irrespective of minor

variations in the fact patterns underlying the individual claims."  *Reynolds v. Giuliani*,

118 F. Supp. 2d 352, 389 (S.D.N.Y. 2000) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936–37

(2d Cir. 1993)).  Because the commonality and typicality requirements "tend to merge," DOH's

arguments are here too unavailing.  *See M.K.B. v. Eggleston*, 445 F. Supp. 2d 400, 441 (S.D.N.Y.

2006) (citation omitted).

Medicaid managed care organizations (MCOs), rather than DOH itself, make the initial individual determinations about whether a beneficiary is eligible for dental implants, replacement dentures, root canals, or crowns. (Dkt. No. 92 at 13.) DOH relies on the fact that MCOs have the ability to "adopt [their] own written criteria to determine whether a particular service is medically necessary," but concedes that MCOs' criteria cannot be "more restrictive than that provided by DOH." (Dkt. No. 92 at 18.) DOH argues that because MCOs potentially have different policies for determining medical necessity, it is not clear that all members of the class are harmed in the same way by the Manual. (*See id.*) However, the facts that DOH's Manual establishes the baseline for MCOs' eligibility determination, and that MCOs are allowed by the Manual to adopt dental policies that Plaintiffs allege violate federal law, impact all members of the class in the same way. Because the MCOs are irrelevant for typicality purposes, it similarly does not matter that all eighty-eight MCOs are not represented among the named plaintiffs. (*See* Dkt. No. 92 at 19–20.) Therefore, like the commonality requirement, the typicality requirement is satisfied.

### 3. Ascertainability

The implied requirement of ascertainability is "a judicial creation meant to ensure that class definitions are workable when members of the class will be entitled to damages or require notice for another reason." *Floyd v. City of New York*, 283 F.R.D. 153, 171 (S.D.N.Y. 2012). DOH argues that the court will be unable to determine whether a particular individual is a member without a "mini-hearing" on the merits, and therefore class certification should be denied. (*See* Dkt. No. 92 at 23.) However, because this is a putative Rule 23(b)(2) class seeking only declaratory and injunctive relief, the Court does not need to undertake such an analysis. The Second Circuit has approved of a 23(b)(2) class definition without precise ascertainability. *See Marisol v. Giuliani,* 126 F.3d 372 (2d Cir. 1997) (certifying a class of children who "are or

will be at risk of neglect or abuse and whose status is or should be known to" the New York City Administration for Children's Services).  Indeed, "it would be illogical to require precise ascertainability in a suit that seeks no class damages." *Floyd,* 283 F.R.D. at 172.  This Court declines to do so here.  The general contours of the proposed class — Medicaid beneficiaries who require one of the services governed by the challenged provisions of the Manual but are ineligible due to those provisions — is sufficient.

### 4.    Rule 23(b)(2)

A class can be certified pursuant to Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Plaintiffs clearly satisfy this requirement.  Cases where, as here, plaintiffs allege "systematic failure of governmental bodies to fulfill statutory requirements, have been held to be appropriate for class certification under Rule 23(b)(2)." *Brooklyn Ctr. for Indep. of the Disabled,* 290 F.R.D. at 420 (citation omitted).  In addition, this Court finds it appropriate given the Medicaid context "to consider the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually." *M.G.*, 162 F. Supp. 3d at 234 (internal quotations omitted).

The Supreme Court has held that certification of a class pursuant to Rule 23(b)(2) is appropriate only where "a single injunction . . . would provide relief to each member of the class." *Wal-Mart Stores, Inc.*, 564 U.S. at 360.  The relief to each class member need not be "identical," only "beneficial." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 97 (2d Cir. 2015).  In this case, Plaintiffs seek an injunction requiring that DOH bring its coverage policies in line with federal law.  (*See* Dkt. No. 76 at 20.)  Notwithstanding Defendant's argument that Plaintiffs' injuries are too individualized to support a Rule 23(b)(2) class (*see* Dkt. No. 92 at 23–

24), the requested injunction would undoubtably be "beneficial" to each member of the class, because MCOs are unable to adopt policies more restrictive than those of DOH. (*See* Dkt. No. 92 at 18.)

**IV.    Conclusion**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs' motion for class certification is GRANTED. Plaintiffs shall file a letter informing the Court whether they intend to file an amended complaint in accordance with this opinion on or before October 21, 2019.

The Clerk of Court is directed to close the motions at Docket Numbers 75 and 85, and to terminate Richard Palazzolo as a party to this action.

SO ORDERED.

Dated:  September 30, 2019
        New York, New York

_____
              J. PAUL OETKEN
        United States District Judge