UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__1/6/2021____
```

FRANK CIARAMELLA, LILLIAN VELAZQUEZ,
ANNEMARIE WALKER, ANTONIO MARTIN,
CHRISTOPHER RUSSO, MATTHEW ADINOLFI,
JODY VIRTUOSO, YVONNE HAWKINS,
BLANCA CORREAS, and BRENDA PERRY, on
behalf of themselves and all others similarly situated,

No. 18 Civ. 6945

**JOINT ELECTRONIC
DISCOVERY SUBMISSION
AND ORDER**

Plaintiffs,

- against -

HOWARD ZUCKER, as Commissioner of the
Department of Health,

Defendant.

Plaintiffs Frank Ciaramella, Lillian Velazquez, AnneMarie Walker, Antonio Martin,

Christopher Russo, Matthew Adinolfi, Jody Virtuoso, Yvonne Hawkins, Blanca Correas, and

Brenda Perry, on behalf of themselves and all others similarly situated (together, "Plaintiffs")

and Howard Zucker, in his official capacity as Commissioner of the Department of Health

("Defendant") (together, the "Parties") believe that relevant information may exist or be stored in

electronic format and that this content is potentially responsive to current or anticipated

discovery requests. This Joint Submission and Order (the "ESI Protocol") shall be the governing

document(s) by which the Parties and the Court manage the electronic discovery process in this

action. The Parties and the Court recognize that this ESI Protocol is based on facts and

circumstances as they are currently known to each party, that the electronic discovery process is

iterative, and that additions and modifications to this Submission may become necessary as more

information becomes known to the Parties.

I.      **COMPETENCE**

The undersigned counsel certify that they are sufficiently knowledgeable in matters relating to their clients' technological systems to discuss competently issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.

II.     **MEET AND CONFER**

Pursuant to Fed. R. Civ. P. 26(f), counsel are required to meet and confer regarding certain matters relating to electronic discovery before the Initial Pretrial Conference (the Rule 16 Conference). Counsel hereby certify that they have met and conferred to discuss these issues.

III.    **PRESERVATION**

The Parties have discussed the obligation to preserve potentially relevant electronically stored information ("ESI") and agree to the following scope and methods for preservation, including but not limited to: retention of electronic data and implementation of a data preservation plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc.

Plaintiffs' counsel has advised Plaintiffs as to their obligations to preserve potentially-relevant data and directed them specifically to maintain such data in electronic sources, including but not limited to personal email, text messages, devices (including information stored on cellular telephone(s) and tablets), social media including but not limited to Facebook, LinkedIn, Google+, WhatsApp, Instagram, Twitter, and associated instant messaging and direct messaging applications, and have taken steps to prevent the loss of potentially-relevant information.

Following a reasonably diligent investigation, Defendant has sent preservation notices to all identified individuals with potentially relevant data at the New York State Department of

Health ("DOH") directing retention of all potentially-relevant data maintained in electronic sources including those specifically identified above, and DOH has taken steps to prevent loss of potentially relevant data.

## IV.    LITIGATION HOLD COMMUNICATIONS

The dates, contents, and/or recipients of "litigation hold" communications are subject to the attorney-client communication privilege.  Following a reasonably diligent investigation, Defendant has sent preservation notices to all identified individuals with potentially relevant data at DOH directing retention of electronic data, and has taken steps necessary to prevent loss of potentially relevant data.  Plaintiffs' counsel has advised Plaintiffs to retain materials relevant to this litigation and take any necessary steps to prevent loss of potentially relevant data.

### A.    Plaintiffs' Position

Plaintiffs' counsel has instructed Plaintiffs in writing to maintain all relevant records, and has reached out to Plaintiffs' medical providers for additional relevant records.  Plaintiffs' counsel has provided Plaintiffs with litigation hold memoranda.

### B.    Defendant's Position

Following a reasonably diligent investigation, Defendant has sent preservation notices to all identified individuals with potentially relevant data at DOH directing retention of electronic data, and has taken additional steps to prevent loss of potentially relevant data.

## V.    SEARCH AND REVIEW

The parties have met and conferred in good faith with respect to the relevant custodians, search terms, and date restrictions. The Parties have met and conferred in good faith to determine the appropriate search terms, date ranges, custodians, locations of data, fields or file types to be searched, whether back-up, archival, or legacy ESI will be included in the search, and ESI in the

possession, custody or control of Parties and non-Parties.  During the course of these

negotiations, the Parties have exchanged hit reports.  Based upon their negotiations, the Parties

agree as follows:

### A.    Timeframe for ESI Discovery

The Parties shall produce ESI for the time period from August 2, 2015 until March 1,

2020.  As outlined in Section V(C), below, Defendant shall engage in reasonable good-faith

efforts to identify and produce relevant ESI for the years 1995, 2010, and 2011.

The Parties continue to meet and confer regarding the appropriate custodians and specific

time period for relevant ESI generated between 2010 and 2011.  The Parties agree that

Defendant's search for ESI from 1995 will be limited to ESI available on Defendant's current

systems, as identified by Dr. Khalil Alshaer, Dr. Michele Griguts, Dr. George Gostling, and

Gregory Allen.

As noted on Page 1 of this submission, the Parties and the Court recognize that this ESI

Protocol is based on facts and circumstances as they are currently known to each party, that the

electronic discovery process is iterative, and that additions and modifications to this Submission

may become necessary as more information becomes known to the Parties.  Accordingly,

Plaintiffs reserve the right to request additional discovery upon good cause shown.  Defendant in

turn reserves the right to oppose Plaintiffs' requests for ESI discovery beyond the protocol

negotiated by the Parties and set forth herein,, and both parties reserve the right to seek extension

of the fact discovery deadline if necessary.

### B.    Custodians for ESI Discovery

Discovery of Plaintiffs' ESI will be limited to the following custodians:

        1.    FRANK CIARAMELLA
        2.    LILLIAN VELAZQUEZ

    3.     ANNEMARIE WALKER
    4.     ANTONIO MARTIN
    5.     CHRISTOPHER RUSSO
    6.     MATTHEW ADINOLFI
    7.     JODY VIRTUOSO
    8.     YVONNE HAWKINS
    9.     BLANCA CORREAS
    10.    BRENDA PERRY

Discovery of Defendant's ESI will be limited to the following custodians:

    1.     KHALIL ALSHAER
    2.     MICHELE GRIGUTS
    3.     GEORGE GOSTLING
    4.     GREGORY ALLEN

The Parties meet their ESI discovery obligations by applying the procedures outlined in section V(C), below for the custodians listed above, unless the parties jointly agree to modify the list of custodians upon good cause shown.

<u>Sources of ESI</u>

Discovery of Plaintiffs' ESI in this case will be limited to the ESI in Plaintiffs' possession, custody, or control, including, if applicable: medical records, notices from health plans, and non-privileged correspondence with providers; personal email; personal computer(s), tablet(s), and other devices; text messages; cloud files including but not limited to those available on hosted platforms such as Google Documents; social media, including but not limited to postings and non-privileged messaging on Facebook, Instagram, LinkedIn, SnapChat, Twitter, Skype, WhatsApp, Google+; and cloud-based instant messaging applications such as Google Hangouts, Facebook Messenger, WhatsApp, and Twitter Direct Messaging.

Discovery of Defendant's ESI in this case will be limited to the ESI in Defendant's possession, custody, or control, and will occur from the following sources of ESI: email servers, work desktops, and shared and personal work folders identified by the ESI Custodian in

consultation with DOH in-house counsel, including any databases identified by the Department

of Health in its March 16, 2020 Responses and Objections to Plaintiffs' First Set of

Interrogatories.

### C.      Linear Review Using Search Terms

Plaintiffs meet their obligations to respond to Defendant's production requests for ESI by

requiring the individuals identified in Section V.B. to perform a self-search of their records,

supervised by Plaintiffs' counsel.  In addition, Plaintiffs' counsel will review available medical

records for the individuals identified in Section V.B.  Plaintiffs' supervised self-collection of

their medical records does not limit Defendant's right to subpoena Plaintiffs' medical records

related to the services in issue in this proceeding or depose any medical providers in the course

of discovery.

Defendant meets its obligations to respond to Plaintiffs' production requests for email

ESI, including any attachments which shall be subjected to optical character recognition

("OCR") if not already containing extracted text, by applying the terms set forth in Exhibit A

attached hereto to each Custodian's Outlook folder for the Relevant Time Period, unless the

parties jointly agree to modify the search terms upon good cause shown.

Defendant shall meet its obligations to respond to Plaintiffs' production requests for non-

email ESI through the following process: (1) counsel for DOH shall interview each Custodian to

identify the likely sources and locations of non-Outlook ESI maintained by that Custodian

regarding the provision of dental implants, replacement dentures, molar root canals, and crowns

by the New York State Medicaid program during the Relevant Time Period (the "Custodial

Interview"); (2) following the Custodial Interview, counsel shall collect the documents or

categories of documents identified by each Custodian during the Custodial Interview and in a

manner that preserves the metadata for such documents; (3) counsel shall conduct a reasonable search and review of the collected documents and produce all non-privileged documents responsive to Plaintiffs' Requests for Production of Documents.  During the Custodial Interview, Defendant shall ask each Custodian as to: (1) the existence and likely location(s) of potentially relevant ESI from 1995, 2010, and 2011; and (2) the identities of likely Outlook custodians for the time period of 2010 to 2011.

## VI.   SCOPE OF PRODUCTION

Subject to any specific objection, the Parties agree to produce all non-privileged, responsive documents and their families, consistent with Fed. R. Civ. P. 26(b), that have been located after a reasonably diligent search.  In the course of review, the absence of a "hit" on one of the search terms set forth in Exhibit A shall not be grounds for withholding a relevant, non-privileged document.

## VII.   FORM OF PRODUCTION

The Parties have reached the following agreements regarding the form(s) of production:

### A.   ESI Production Format

The parties will produce ESI in LexisNexis® Concordance® format in accordance  with the following instructions:

1.   Concordance Production Components.  A Concordance production consists of the  following component files, which must be produced in accordance with the specifications set forth below.

A.   ***Native Files.***  Native format versions of produced, non-redacted documents, which are not coherently or legibly renderable in page images, named by their first Bates number.

B.   ***Single-Page Image Files.***  Individual petrified page images of the produced  documents in tagged image format ("TIF"), or, in the case of documents with color information, JPEG format ("JPG"), with page-level

Bates number endorsements.

C.   ***Extracted or OCR Text Files.***  Document-level extracted text for each produced document or document-level OCR text where extracted text is not available.

D.   ***Metadata Load File.***  A delimited text file that lists in columnar format the required metadata for each produced document.

E.   ***Opticon Load File.***  A delimited text file that lists the single-page TIF or JPG files for each produced document and defines (i) the relative location of the TIF files on the production media and (ii) each document break.

2.   <u>Production Folder Structure</u>.  The production shall be organized according to the following standard folder structure:

- data\ (contains production load files)

- images\ (contains single-page TIF or JPG files, with subfolder organization)

    \0001, \0002, \0003…

- natives\ (contains native files, with subfolder organization)

    \0001, \0002, \0003…

- text\ (contains text files, with subfolder organization)

    \0001, \0002, \0003…

3.   <u>De-Duplication and Email Threading</u>.  The Parties shall de-duplicate documents within custodians (vertical de- duplication) prior to production.  Vertical de-duplication means that exact duplicates of documents held by a particular custodian, as identified by the MD5hash or SHA value of the parent document, will not be produced. The Parties will also de-duplicate across custodians (global/horizontal de-duplication) prior to production. Horizontal de-duplication means that exact duplicates of documents held by multiple custodians, as identified by the MD5hash or SHA value of the parent, will not be produced. In instances where several email documents exist in a common thread, only the most inclusive version of those conversations need be produced (these are referred to as "Inclusive" documents). The

identification of Inclusive documents for production shall be done in a manner which ensures that all unique responsive content is produced at least once.  Inclusive documents which are identified by the system as "Duplicate Spares" need not be produced.

4. Paper or Scanned Documents.  Documents that exist only in paper format must be  scanned to single-page TIF, or, in the case of color content, JPG files, and OCR'd.  The resulting electronic files should be  pursued in Concordance format.

5. Structured Data.  Structured data includes but is not limited to relational databases,  transactional data, and xml pages. Spreadsheets are not considered structured data.

   A. Relational Databases

      1. Database tables should be provided in comma-separated or other  machine-readable, non-proprietary format, with each table in a separate data file.  Each data file must have an accompanying data dictionary that explains the  meaning of each column name and explains the values of any codes used.

      2. Dates and numbers must be clearly and consistently formatted and,  where relevant, units of measure should be explained in the data dictionary.

      3. Records must contain clear, unique identifiers, and the data dictionary must include explanations of how the files and records relate to one  another.

6. Media and Encryption.  In light of the COVID-19 pandemic, all document sets must be produced via secure file transfer protocols (e.g., FTP). To the extent a Party believes it is unable to deliver a document production via electronic transmission, the Parties shall confer to determine an alternative means of production.  All productions must be encrypted with a strong password,  which must be delivered independently from the production media.

7. Production File Requirements.

   A. *Native Files*

     • Documents that are not legibly or coherently renderable in an image

format must be produced in their original native format; however, original native format documents will not be produced for documents containing privileged or personally identifying information regardless of their renderability.  Instead, documents containing privileged or personally identifying information will be produced in a non-native, redacted image or 'near-native' format (with the appropriate information removed).

- The filename of each native file must match the document's beginning Bates  number (BEGDOC) in the metadata load file and retain the original file  extension.

- For documents produced only in native format, and not additionally as single-page image files, the Parties assign a single document-level Bates number and  optionally provide an image file placeholder that states "Document produced  only in native format."

- The relative paths to all native files on the production media must be listed in  the NATIVEFILE field of the metadata load file.

- Native files that are password-protected must wherever possible be decrypted prior to conversion  and produced in decrypted form.

B.   ***Single-Page Image Files (Petrified Page Images)***

- Where possible, all produced documents must be converted into single-page  tagged image format ("TIF") or, in the case of documents with color content, JPEG ("JPG") files.

- Image documents that exist only in non-TIF or JPG formats must be converted into  TIF, or in the case of documents with color content, JPG files.

- For documents produced only in native format, a Party may provide a single, TIF  placeholder that states "Document produced only in native format."

- Each single-page TIF or JPG file must be endorsed with a unique Bates number.

- The filename for each single-page TIF or JPG file must match the unique page-level  Bates number (or document-level Bates number for documents produced only  in native format).

- Required image file format for TIF files:

  o  CCITT Group 4 compression

  o  2-Bit black and white

- o 300 dpi

- o Either .tif or .tiff file extension.

- TIF or JPG files must be divided into subfolders containing no more than 5000 files. Documents should not span multiple subfolders, a document with more than 5000 pages should be kept in a single folder.

C.   *Extracted or OCR Text Files*

- The Parties shall produce individual document-level text files containing the full extracted text for each produced document.

- When extracted text is not available (for instance, for image-only documents) the Parties must provide individual document-level text files containing the document's full OCR text.

- The filename for each text file must match the document's beginning Bates number (BEGDOC) listed in the metadata load file.

- Text files must be divided into subfolders containing no more than 5000 files.

D.   *Metadata Load File*

- Required file format:

  - o UTF-8

  - o .dat file extension

  - o Field delimiter: I(ASCII decimal character 20)

  - o Text Qualifier: þ (ASCII decimal character 254). Multiple value field delimiter: ; (ASCII decimal character 59)

- The first line of the metadata load file must list all included fields. All required fields are listed in Section 9(B).

- Fields with no values must be represented by empty columns maintaining delimiters and qualifiers.

- *Note:* All documents must have page-level Bates numbering (except documents produced only in native format, which must be assigned a document-level Bates number). The metadata load file must list the beginning and ending Bates numbers (BEGDOC and ENDDOC) for each document.

- Accepted date formats:

- o   mm/dd/yyyy

- o   yyyy/mm/dd

- o   yyyymmdd

- Accepted time formats:

  - o   hh:mm:ss (if not in 24-hour format, indicate am/pm)

  - o   hh:mm:ss:mmm

E.   ***Opticon Load File***

- Required file format:

  - o   Field delimiter: (ASCII decimal character 44)

  - o   No Text Qualifier

  - o   .opt file extension

- The comma-delimited Opticon load file must contain the following seven  fields (as indicated below, values for certain fields may be left blank):

  - o   ALIAS or IMAGEKEY – the unique Bates number assigned to each page of the production.

  - o   VOLUME – this value is optional and may be left blank.

  - o   RELATIVE PATH – the file path to each single-page image file on the production media.

  - o   DOCUMENT BREAK – defines the first page of a document.  The only possible values for this field are "Y" or blank.

  - o   FOLDER BREAK – defines the first page of a folder.  The only possible values for this field are "Y" or blank.

  - o   BOX BREAK – defines the first page of a box.  The only possible values for this field are "Y" or blank.

  - o   PAGE COUNT – this value is optional and may be left blank.

- ***Example*:**

  ABC00001,,IMAGES\0001\ABC00001.tif,Y,,,
  2

ABC00002,,IMAGES\0001\ABC00002.tif,,,,
ABC00003,,IMAGES\0002\ABC00003.tif,Y,,,
1
ABC00004,,IMAGES\0002\ABC00004.tif,Y,,,
1

F.   ***Metadata and Associated Delimited Database Load Files***

The Producing Party shall provide delimited database load files, with ".dat" or ".txt" file extensions.  For the Concordance .dat, the Producing Party shall use Concordance standard delimiters (ASCII 020 corresponding to a comma, ASCII 254 corresponding to a double quote, ASCII 174 corresponding to a new line, and a semicolon used to separate values).  All .dat or .txt files must be encoded in ASCII or ANSI:UTF codings.

The metadata fields listed below shall be included in the delimited database load files, except, to the extent that metadata relating to any ESI contains information subject to a claim of privilege or any other applicable protection, that metadata may be redacted or withheld, as appropriate.

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| BEGDOC | Bates number assigned to the first page of the document. | ABC0001 |
| ENDDOC | Bates number assigned to the last page of the document. | ABC0002 |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (*i.e.*, should be the same as BEGDOC of the parent document, or PARENTDOC). | ABC0001 |
| ENDATTACH | Bates number assigned to the last page of the last child document in a family (*i.e.*, should be the same as ENDDOC of the last child document). | ABC0008 |
| COMMENTS | Additional document comments, such as passwords for encrypted files. | |

---

[1]   Examples represent possible values and not required format.

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| NATIVEFILE | Relative file path of the native file on the production media. | .\Native_File\Folder\...\BEGDOC.ext |
| TEXTFILE | Relative file path of the plain text file on the production media. | .\Text_Folder\Folder\...\BEGDOC.txt |
| CUSTODIAN | Owner of the document or file. | Firstname Lastname, Lastname, Firstname, User Name; Company Name, Department Name... |
| ALL CUSTODIANS | Names of all custodians for whom the document was processed whether or not the file was removed upon deduplication | |
| FROM | Sender of the email. | Firstname Lastname < FLastname @domain > |
| TO | All to: members or recipients, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| CC | All cc: members, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| BCC | All bcc: members, delimited by ";" when field has multiple values | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| SUBJECT | Subject line of the email. | |
| DATERCVD | Date that an email was received. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| TIMERCVD | Time that an email was received. | hh:mm:ss AM/PM or hh:mm:ss |
| DATESENT | Date that an email was sent. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMESENT | Time that an email was sent. | hh:mm:ss AM/PM or hh:mm:ss |
| CALBEGDATE | Date that a meeting begins. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| CALENDDATE | Date that a meeting ends. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| ATTACHMENTS | List of filenames of all attachments, delimited by ";" when field has multiple values. | AttachmentFileName.; AttachmentFileName.docx; AttachmentFileName.pdf;… |
| NUMATTACH | Number of attachments. |  |
| RECORDTYPE | General type of record. | IMAGE; LOOSE E-MAIL; E-MAIL; E-DOC; IMAGE ATTACHMENT; LOOSE E-MAIL ATTACHMENT; E- MAIL ATTACHMENT; E-DOC ATTACHMENT |
| FOLDERLOC | Original folder path of the produced document. | Drive:\Folder\...\...\ |
| FILENAME | Original filename of the produced document. | Filename.ext |
| DOCEXT | Original file extension. | html, xls, pdf |
| TITLE | Document title (if entered). |  |
| AUTHOR | Name of the document author. |  |
| DATECREATED | Date and time that a document was created. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| TIMECREATED | Time that a document was created. | hh:mm:ss AM/PM or hh:mm:ss |
| DATEMOD | Date that a document was last modified. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMEMOD | Time that a document was last modified. | hh:mm:ss AM/PM or hh:mm:ss |
| FILESIZE | Original file size in bytes. | |
| MD5HASH | MD5 hash value computed from native file (a/k/a file fingerprint). | |
| SHA1HASH | SHA1 hash value | |
| CONVERSATIONINDEX | Email Conversation Index or other similar email thread identification value | |

G.   *Hard-Copy Production Format*

Documents that exist only in hard-copy format ("Hard-Copy Materials") and are therefore unavailable in native ESI format (e.g., handwritten notes, including alterations to documents that are otherwise kept and producible as ESI in their unaltered form, or materials that were generated as ESI but where ESI files are inaccessible because they are not in the possession or control of the Parties), shall be scanned and produced in accordance with the specifications delineated in Section VII.A.4, above, except that only the metadata fields listed below, or substantially similar metadata fields, shall be included in the delimited database load files.

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| BEGBATES | Beginning production number for a given document |

| ENDBATES | Ending production number for a given document |
| --- | --- |
| BEGBATESATTACH | If available (typically only available if documents have been unitized) |
| ENDBATESATTACH | If available (typically only available if documents have been unitized) |
| CUSTODIAN | Person, shared file or other source from whom files were collected |
| TEXTPATH | Relative path to document level OCR or extracted text file |

H.   *Media Used for Production*

In light of the COVID-19 pandemic, documents shall be exchanged through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission, unless and until the parties agree to an alternative method based on changed circumstances. To the extent a Party believes it is unable to deliver a document production via electronic transmission, the Parties shall confer to determine an alternative means of production.

All productions must be encrypted with a strong password (a password containing letters, numbers, and special characters),  which must be delivered independently from the production media.

**VIII.   PRIVILEGED MATERIAL**

A.   **Identification**

Each document withheld on account of an asserted privilege or claim of work product protection shall be identified in a privilege log pursuant to Local Civil Rule 26.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. For all documents withheld on the basis of privilege, the Producing Party shall produce a list of the following:

i.      A description of the categories of documents and of how the privilege applies to the logged entries with enough detail to allow opposing counsel to evaluate the applicability of the asserted privilege;

ii.      The types of documents in each category;

iii.      The number of documents in each category;

iv.      The name listed in the "author/from" metadata field;

v.      All recipient(s) listed in the recipient/to, cc and bcc metadata fields;

vi.      The date range associated with the documents in each category; and

vii.      The privilege(s) asserted.

The Producing Party need not include privileged information that is redacted from a document on a privilege log. However, the privilege(s) asserted shall appear on the face of the redacted document. To the extent that it is not apparent how the privilege(s) applies to redacted information, the privilege(s) asserted and a description of how that privilege(s) applies to redacted information shall appear on the face of the redacted document.

The Parties agree that these formats comply with the Parties' obligations under Federal Rule of Civil Procedure and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. Nothing herein shall be construed as an agreement as to the availability of the deliberative process privilege, or any other privilege doctrine, under the circumstances of this litigation. A Receiving Party's determination not to challenge the format of a Producing Party's privilege log shall not be deemed an admission that the log's format complies with the requirements of Part VIII.A of this ESI Protocol, the Federal Rules of Civil Procedure, or the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York; and it shall not be deemed a waiver of the right to challenge future privilege logs produced in the same format.

### B.    Inadvertent Production/Claw-Back Agreement

The terms of the Stipulated Order Regarding the Disclosure of Privileged Information (the "Rule 502(d) Order") and Protective Order, which contain the Parties' agreements regarding the treatment of inadvertently produced Confidential Discovery Material and/or privileged materials, govern any issues regarding inadvertent production and potential claw-backs of materials.

## IX.    COST OF PRODUCTION

The Parties have agreed that all costs of search, review and production shall be borne by the party making that production, without prejudice to any application for costs permitted under applicable law.

## X.    OTHER ISSUES

The Parties reiterate that the forthcoming stipulated discovery confidentiality order, as supplemented or modified, shall govern their rights and obligations with respect to the production of Confidential Discovery Material.

**The preceding constitutes the agreement(s) reached, and disputes existing, (if any) between the Parties to certain matters concerning electronic discovery as of this date. To the extent additional agreements are reached, modifications are necessary, or disputes are identified, they will be outlined in subsequent submissions or agreements and promptly presented to the Court.**

SO STIPULATED AND AGREED.

Dated:   November ___, 2020          Dated:   November 24, 2020
         New York, New York                  New York, New York

WILLKIE FARR & GALLAGHER LLP          LETITIA JAMES
                                      Attorney General of the State of New York
Wesley R. Powell, Esq.                *Attorney for Defendant*
Timothy G. Fleming, Esq.              By:
787 Seventh Avenue
New York, New York 10019              _____
tel. (212) 728-8000
fax. (212) 728-8111                   Cara B. Chomski
e-mail: meaton@willkie.com            Assistant Attorney General
e-mail: wpowell@willkie.com           28 Liberty Street, 17th Floor
                                      New York, New York 10005
THE LEGAL AID SOCIETY                 tel: (212) 416-8177
Judith Goldiner, Esq.                 fax: (212) 416-6075
Belkys Garcia, Esq.                   email: Cara.Chomski@ag.ny.gov
199 Water Street, 3rd Floor
New York, New York 10038
tel. (212) 577-3300
e-mail: jgoldiner@legal-aid.org
e-mail: brgarcia@legal-aid.org

*Attorneys for Plaintiffs*

By:

_____
Wesley R. Powell


SO ORDERED.

Dated: New York, New York
         January   6  , 2021

_____
HON. MARY KAY VYSKOCIL
United States District Judge

- 20 -

SO STIPULATED AND AGREED.

Dated:   December 14, 2020
         New York, New York

WILLKIE FARR & GALLAGHER LLP

Wesley R. Powell, Esq.
Timothy G. Fleming, Esq.
787 Seventh Avenue
New York, New York 10019
tel. (212) 728-8000
fax. (212) 728-8111
e-mail: wpowell@willkie.com

By:
_____
Wesley R. Powell

THE LEGAL AID SOCIETY
Judith Goldiner, Esq.
Belkys Garcia, Esq.
199 Water Street, 3rd Floor
New York, New York 10038
tel. (212) 577-3300
e-mail: jgoldiner@legal-aid.org
e-mail: brgarcia@legal-aid.org

By:
_____
Belkys Garcia

FRESHFIELDS BRUCKHAUS DERINGER
US LLP
Mary Eaton, Esq.
601 Lexington Avenue, 31st Floor
New York, New York 10022
tel. (212) 277-4000
e-mail: mary.eaton@freshfields.com

By:
_____
Mary Eaton

*Attorneys for Plaintiffs*

- 20 -

SO STIPULATED AND AGREED.

Dated:   December 14, 2020
            New York, New York

WILLKIE FARR & GALLAGHER LLP

Wesley R. Powell, Esq.
Timothy G. Fleming, Esq.
787 Seventh Avenue
New York, New York 10019
tel. (212) 728-8000
fax. (212) 728-8111
e-mail: wpowell@willkie.com

By:

_____
Wesley R. Powell

THE LEGAL AID SOCIETY
Judith Goldiner, Esq.
Belkys Garcia, Esq.
199 Water Street, 3rd Floor
New York, New York 10038
tel. (212) 577-3300
e-mail: jgoldiner@legal-aid.org
e-mail: brgarcia@legal-aid.org

By: *Belkys Garcia*
_____
Belkys Garcia

FRESHFIELDS BRUCKHAUS DERINGER
US LLP
Mary Eaton, Esq.
601 Lexington Avenue, 31st Floor
New York, New York 10022
tel. (212) 277-4000
e-mail: mary.eaton@freshfields.com

By:

_____
Mary Eaton

*Attorneys for Plaintiffs*

SO STIPULATED AND AGREED.

Dated:    December 14, 2020
          New York, New York

WILLKIE FARR & GALLAGHER LLP

Wesley R. Powell, Esq.
Timothy G. Fleming, Esq.
787 Seventh Avenue
New York, New York 10019
tel. (212) 728-8000
fax. (212) 728-8111
e-mail: wpowell@willkie.com

By:
_____

Wesley R. Powell

THE LEGAL AID SOCIETY
Judith Goldiner, Esq.
Belkys Garcia, Esq.
199 Water Street, 3rd Floor
New York, New York 10038
tel. (212) 577-3300
e-mail: jgoldiner@legal-aid.org
e-mail: brgarcia@legal-aid.org

By:
_____

Belkys Garcia

FRESHFIELDS BRUCKHAUS DERINGER
US LLP
Mary Eaton, Esq.
601 Lexington Avenue, 31st Floor
New York, New York 10022
tel. (212) 277-4000
e-mail: mary.eaton@freshfields.com

By:      M. Eaton.
_____

Mary Eaton

*Attorneys for Plaintiffs*