UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANK CIARAMELLA, RICHARD PALAZZOLO, LILLIAN VELAZQUEZ, ANNEMARIE WALKER, ANTONIO MARTIN, CHRISTOPHER RUSSO, MATTHEW ADINOLFI, JODY VIRTUOSO, YVONNE HAWKINS, BLANCA COREAS, and BRENDA PERRY, on behalf of themselves and all others similarly situated,

Plaintiffs,

-v-

HOWARD ZUCKER, AS COMMISSIONER OF THE DEPARTMENT OF HEALTH,

Defendant.

CIVIL ACTION NO.: 18 Civ. 6945 (MKV)(SLC)

**OPINION AND ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

In this action involving claims under the Medicaid Act, 42 U.S.C. §§ 1396 et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq., Defendant Howard Zucker ("Zucker"), Commissioner of the New York State Department of Health ("DOH"), has asserted the deliberative process privilege (the "Privilege") as grounds to withhold from document production drafts (the "Drafts") of the "New York State Medicaid Program Dental Policy and Procedure Code Manual" (the "Manual") on which Plaintiffs' claims are based. (ECF Nos. 1 ¶ 45; 197). Plaintiffs argue that the Privilege does not apply in this action. (ECF No. 190).

The Court has conducted an in camera review of a sample of the Drafts selected by the parties. (ECF Nos. 226; 256). For the reasons set forth below, the Court finds that the Privilege

is inapplicable and directs Zucker to produce the Drafts within ten (10) days of this Opinion and Order.

## II. BACKGROUND

The factual background of this action is set forth in detail in the Opinion and Order by the Honorable J. Paul Oetken[1] dated September 30, 2019 granting in part and denying in part Zucker's motion to dismiss the Corrected Amended Complaint ("CAC") and granting Plaintiffs' motion for class certification. Ciaramella v. Zucker, No. 18 Civ. 6945 (JPO), 2019 WL 4805553 (S.D.N.Y. Sept. 30, 2019) ("Ciaramella I"). The Court incorporates that summary in full. Briefly stated, "Plaintiffs challenge New York Medicaid's coverage restrictions regarding dental implants, replacement dentures, root canals, and crowns." Id. at *2. New York's "specific rules governing the circumstances under which New York Medicaid will cover dental services are set forth in the [Manual]," id. at *1, drafts of which are the subject of this dispute over the Privilege.

In Ciaramella I, Judge Oetken rejected, inter alia, Zucker's argument that Plaintiffs failed to state a claim under the Availability Provision of the Medicaid Act and the Rehabilitation Act.[2] Ciaramella I, 2019 WL 4805553, at *7–8. In so holding, Judge Oetken explained:

> Under the Availability Provision of the Medicaid Act, a State plan "must provide for making medical assistance available to all categorically needy individuals, including at least certain enumerated types of care and services." Cruz v. Zucker, 195 F. Supp. 3d 554, 570 (S.D.N.Y. 2016) (citing 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)) (alterations and quotation marks omitted) [rev'd on reconsideration, 218 F. Supp. 3d 246 (2016)]. When interpreting the reach of the Availability Provision, its implementing regulations provide some guidance. Most relevantly,

---

[1] On February 5, 2020, the action was reassigned to the Honorable Mary Kay Vyskocil. (ECF entry dated Feb. 5, 2020).

[2] With respect to Zucker's other arguments for dismissal, Judge Oetken dismissed Plaintiffs' claims under the Reasonable Promptness Provision of the Medicaid Act and the ADA and Rehabilitation Act claims as to Plaintiffs Adinolfi and Virtuoso; Plaintiff Palazzolo's claims were dismissed on grounds of mootness. Ciaramella I, 2019 WL 4085553, at *12.

> "[e]ach service must be sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b). And though "[t]he agency may place appropriate limits on a service based on . . . medical necessity or on utilization control procedures," it "may not arbitrarily deny or reduce the amount, duration, or scope of a required service . . . solely because of the diagnosis, type of illness, or condition." 42 C.F.R. § 440.230(c)–(d). In Cruz v. Zucker, the court assessed the legal landscape and adopted a "never-say-never" rule for interpreting the Availability Provision that prohibits a "categorical ban on medically necessary treatment for a specific diagnosis." 195 F. Supp. 3d at 571. However, the Availability Provision does allow the state "to say 'only sometimes' and to limit the coverage of specific treatments when the state has good reasons for doing so — reasons that ultimately uphold the provision of necessary medical care to needy individuals." Id. This Court adopts the framework set forth in Cruz, and concludes that the Plaintiffs have alleged enough facts to state a claim that the denture policy, root canal policy, and crown policy violate the Availability Provision.

Ciaramella I, 2019 WL 4805553, at *7–8 (emphasis added). The effect of Judge Oetken's denial of Zucker's motion to dismiss the Availability Provision claim was to permit Plaintiffs to proceed to discovery on, inter alia, Zucker's reasoning or intent behind the policy decisions reflected in the Manual. See id. at *8–9.

On November 13, 2019, following Judge Oetken's decision in Ciaramella I, Plaintiffs filed the Second Amended Complaint ("SAC"). (ECF No. 129). Pursuant to the Case Management Plan dated January 14, 2020, fact discovery was to close by September 10, 2020. (ECF No. 152 at 1). The fact discovery deadline was later extended to December 9, 2020, February 8, 2021, and March 11, 2021. (ECF Nos. 171; 177; 185 ¶ 5).

During fact discovery, several disputes arose, including the parties' dispute over Zucker's assertion of the Privilege as a basis to withhold, at the time, 4,500 documents from his production to Plaintiffs. (ECF Nos. 190; 195; 207; 210). On March 16, 2021, Zucker filed a letter responding to Plaintiffs' arguments concerning the Privilege. (ECF No. 196). On May 6, 2021, Judge Vyskocil

referred all the pending discovery disputes, including the dispute over the Privilege, to the undersigned. (ECF No. 215).

During a May 27, 2021 conference on the discovery disputes (ECF minute entry dated May 27, 2021), Zucker informed the Court that he intended to produce to Plaintiffs all but 84 documents withheld on the basis of the Privilege. (ECF No. 226 at 2). Accordingly, as to those 84 documents (the "Remaining Withheld Documents"), the Court ordered Zucker to provide the Court with: (i) an updated privilege log (the "Updated Privilege Log"), (ii) "an affidavit explaining the applicability of the [] Privilege as the basis for withholding the Remaining Withheld Documents (the 'Affidavit')," and (iii) a sample, selected by the parties, of 20 of the Remaining Withheld Documents for the Court's in camera review (the "Sample Documents"). (Id.) On June 10, 2021, Zucker provided the Court with the Updated Privilege Log, the Sample Documents (and an index), and the Declaration of Donna Frescatore, New York State Medicaid Director and Deputy Commissioner, regarding the Privilege (the "Declaration"). On September 10, 2021, the Court held a conference concerning the Privilege. (ECF No. 257; ECF minute entry dated Sept. 10, 2021).

## III. DISCUSSION

### A. Legal Standards

The Privilege "is a 'sub-species' of the work-product doctrine designed to protect the 'process by which governmental decisions and policies are formulated.'" New York v. Wolf, Nos. 20 Civ. 1127 & 20 Civ. 1142 (JMF), 2020 WL 3073294, at *1 (S.D.N.Y. June 10, 2020) (quoting Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 76 (2d Cir. 2002)). The purpose of the privilege is to

"preserv[e] and encourag[e] candid discussion between officials." Nat'l Council of La Raza v. Dep't of Just., 411 F.3d 350, 356 (2d Cir. 2005).

The Privilege allows a governmental agency or official to withhold "an inter- or intra-agency document . . . if it is: (1) 'predecisional,' i.e., 'prepared in order to assist an agency decisionmaker in arriving at his [or her] decision,' and (2) 'deliberative,' i.e., 'actually . . . related to the process by which policies are formulated.'" Id. (citation omitted). The Privilege generally protects from disclosure "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Dipace v. Goord, 218 F.R.D. 399, 403 (S.D.N.Y. 2003) (quoting Grand Cent. P'ship., Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999)). "The party asserting the [P]rivilege bears the burden of proof." In re Grand Jury Subpoena dated Aug. 9, 2000, 218 F. Supp. 2d 544, 553 (S.D.N.Y. 2002) (citations omitted). Courts construe the Privilege "strictly" and "within the narrowest possible limits consistent with the logic of its principle." United States v. Int'l Broth. of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997) (quoting In re Horowitz, 482 F.2d 71, 81 (2d Cir. 1973)).

"Notably, however, the [Privilege] is only a 'qualified' privilege, and, thus, must be balanced 'against the need of the particular litigant for access to the privileged information.'" Wolf, 2020 WL 3073294, at *1 (quoting MacNamara v. City of New York, 249 F.R.D. 70, 79 (S.D.N.Y. 2008) (internal citation omitted)); see In re Grand Jury Subpoena, 218 F. Supp. 2d at 553 (explaining that the Privilege "may be overcome by a showing of need, which is determined on a case by case basis"). "Once the privilege is established, the court must balance the interests supporting and opposing the disclosure." Burbar v. Inc. Vill. of Garden City, 303 F.R.D. 9, 13

(E.D.N.Y. 2014) (quoting Mr. & Mrs. "B" v. Bd. of Educ. of Syosset Cent. Sch. Dist., 35 F. Supp. 2d 224, 228 (E.D.N.Y. 1998)). The Court has discretion "to determine whether to apply it in the first instance, not just whether it has been overcome." In re Grand Jury Subpoena, 218 F. Supp. 2d at 553 (citing Texaco P.R. v. Dep't of Consumer Affairs, 60 F.3d 867, 885 (1st Cir. 1995)). Courts consider the following factors in assessing whether to apply the Privilege:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence. . .; (iii) the 'seriousness' of the litigation and the issues involved. . .; (iv) the role of government in the litigation. . .; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

Mr. & Mrs. "B", 35 F. Supp. 2d at 229 (citation omitted). Courts have explained that, "[i]n balancing these interests, '[f]oremost is the interest of the litigants, and ultimately of society, in accurate judicial fact finding.'" Id. at 229 (internal citation omitted).

"[W]here the deliberations [about a government policy] are among the central issues in the case," the Privilege may be inapplicable altogether. Burbar, 303 F.R.D. at 13; see ACORN v. Cnty. of Nassau, No. 05 Civ. 2301 (JFB) (WDW), 2008 WL 708551, at *4 (E.D.N.Y. Mar. 14, 2008) ("When the decision-making process is itself at issue, particularly in [a] civil rights action, the [P]rivilege and other privileges designed to shield that process from public scrutiny may not be raised as a bar against disclosure of relevant information; it must yield to the overriding public interest in challenging discrimination."); Child. First Found., Inc. v. Martinez, No. 04 Civ. 0927 (NPM) (RFT), 2007 WL 4344915, at *7–8 (N.D.N.Y. Dec. 10, 2007) (noting that the "historical and overwhelming consensus and body of law within the Second Circuit is that when the decision-making process itself is the subject of the litigation, the [P]rivilege cannot be a bar to discovery" and "evaporates"); Azon v. LIRR, No. 00 Civ. 6031 (HB), 2001 WL 1658219, at *3 (S.D.N.Y. Dec. 26,

2001) ("[W]hen the subject of the litigation . . . is the very nature of the decision-making process, the privilege should not foreclose the production of critical information."). "Thus, [when the information] sought may shed light on alleged government malfeasance, the privilege is denied." In re Franklin Nat'l Bank Secs. Litig., 478 F. Supp. 577, 582 (E.D.N.Y. 1979).

**B. The Parties' Arguments**

**1. Plaintiffs**

Plaintiffs argue that the Privilege is inapplicable for two reasons:[3] (i) their "pending civil rights claims put [Zucker's] internal decision-making process directly at issue, so the [Privilege] does not apply;" and (ii) "the [P]rivilege at most could shield communications among high-level government officials, not the entire record of the Department of Health's deliberations concerning the challenged Medicaid dental care coverage restrictions . . ." (ECF No. 190 at 2).

**2. Zucker**

Zucker disputes Plaintiffs' contention that the intent behind the revisions to the Manual is at issue; he maintains that the Medicaid Act, ADA, and Rehabilitation Act "do not require any showing of intent in order for Plaintiffs to prevail." (ECF No. 197 at 2). Here, Zucker argues, "to prevail under the Medicaid Act, ADA, and Rehabilitation Act, Plaintiffs need only show that the alleged violation happened or is ongoing, not the intent behind it." (Id. at 3 (citing 42 U.S.C. § 1396a(a)(1)(A)–(B); 42 U.S.C. § 12132; 29 U.S.C. § 794(a)). Zucker contrasts this case to Cruz v. Zucker, in which Judge Rakoff held that the Privilege did not apply where "[t]he state's intent in passing [the] regulation [was] at the heart of this case, and defendant may not use the . . .

[3] Plaintiffs previously advanced the argument that Zucker had failed to supply an affidavit from a high-level government official, which has now been cured by Zucker's submission of the Declaration. (ECF No. 190 at 2–4).

[P]rivilege as a shield." (Id. at 2) (quoting Cruz v. Zucker, No. 14 Civ. 4456 (ECF No. 197-4 at 1)). Zucker has also narrowed his assertion of the Privilege to the Remaining Withheld Documents, each of which is a draft of the Manual containing line edits and comments from DOH personnel. (See ECF No. 228 at 8–9).

**C. Application of Legal Standards**

Following an in camera review of the Sample Documents, the Court finds that, although the Remaining Withheld Documents are both predecisional and deliberative, Plaintiffs' claims put Zucker's decision-making process at issue in this action, rendering the Privilege inapplicable. Furthermore, a balancing of interests weighs against the application of the Privilege.

As an initial matter, the Remaining Withheld Documents are drafts of the Manual containing edits and comments from DOH personnel. Having reviewed the Sample Documents in camera, the Court finds that they reflect on the decision-making process concerning which policies the Manual would reflect, and, because they were in draft, were predecisional. See Fox News Network, LLC v. U.S. Dep't of Treasury, 911 F. Supp. 2d 261, 277 (S.D.N.Y. 2012) (holding that draft press releases and related emails were protected by the Privilege "since their disclosure would reveal the evolution of Treasury's thinking regarding the proposed [policy decision]"). (See ECF No. 197 at 2 (showing parties' agreement that Remaining Withheld Documents "are generally predecisional inter-agency deliberative documents")).

As quoted above, however, Judge Oetken made clear that whether Zucker had "good reasons" for the policy decisions reflected in the Manual is the subject of—at least—Plaintiffs' claim under the Availability Provision. Ciaramella I, 2019 WL 4085553, at *8. In addition, Zucker's assertion of the affirmative defense that he had "legitimate and non-discriminatory reasons" for

his "decisions . . . with respect to Plaintiffs" demonstrates that the reasons why the final version of the Manual reflects the policies it does are relevant and discoverable. (ECF No. 144 ¶ 223). At least at this stage of the proceedings, those "decisions" include the choices he (or his subordinates) made concerning which dental treatments to cover, and to what extent, in the Manual. See Ciaramella I, 2019 WL 4085553, at *2, 11 (summarizing Plaintiffs' claims challenging "New York Medicaid's coverage restrictions regarding dental implants, replacement dentures, root canals, and crowns," which are "set forth in" the Manual). Accordingly, this action is one in which "the decision-making process itself is the subject of the litigation," such that the Privilege "evaporates." Child. First Found., 2007 WL 4344915, at *7–8 (collecting cases holding that the Privilege was inapplicable where plaintiff alleged that government defendants acted in an arbitrary manner in rendering a policy decision).

Even if the Court were to deem the Privilege applicable, the Court finds that the five discretionary factors that courts in the Second Circuit consider weigh against allowing the Privilege to shield the Remaining Withheld Documents. Having listed the Remaining Withheld Documents on his Updated Privilege Log, Zucker effectively admitted that they are relevant and responsive to Plaintiffs' discovery demands. The edits and comments that appear on the drafts of the Manual are relevant to whether Zucker had "good reasons" for the policy decisions about which dental treatments would be covered. Ciaramella I, 2019 WL 4085553, at *8–9. In addition, Zucker has not shown that any documents he has produced contain the comments that are reflected in the Remaining Withheld Documents, and therefore has not satisfied his burden to demonstrate that they would be duplicative. It is also undisputed that the issues in this action, involving claims that "thousands of low-income New Yorkers [] are being denied medically

necessary dental care by New York State," (ECF No. 129 ¶ 1), are "serious[]" issues concerning decisions by governmental actors. Mr. & Mrs. "B", 35 F. Supp. 2d at 229 (quoting In re Franklin Nat'l Bank, 478 F. Supp. at 583). The small possibility that government employees could be chilled in their internal deliberations is outweighed by the other factors, which balance in favor of disclosure of the Remaining Withheld Documents.

## IV. CONCLUSION

For the reasons set forth above, the Court holds that the Privilege is inapplicable in this action. Within ten (10) days of this Opinion and Order, Zucker shall produce to Plaintiffs the Remaining Withheld Documents.

Dated: New York, New York
September 16, 2021

SO ORDERED.

SARAH L. CAVE
United States Magistrate Judge