UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANK CIARAMELLA, LILLIAN VELAZQUEZ, ANNEMARIE WALKER, ANTONIO MARTIN, CHRISTOPHER RUSSO, MATTHEW ADINOLFI, JODY VIRTUOSO, YVONNE HAWKINS, BLANCA COREAS, and BRENDA PERRY, on behalf of themselves and all others similarly situated,<br><br>                            Plaintiffs,<br><br>                          - against -<br><br>JAMES V. MCDONALD, as Acting Commissioner of the Department of Health,<br><br>                            Defendant. | No. 18 Civ. 6945 (MKV) (SC) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND GENERAL RELEASE, AND APPROVAL OF THE <u>PROPOSED CLASS FAIRNESS NOTICE</u>**

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ...................................................................................................................I

PRELIMINARY STATEMENT ......................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .....................................................................1

    I.    Parties.................................................................................................................................1

    II.    Procedural History ............................................................................................................2

    III.    Discovery and Mediation...................................................................................................6

TERMS OF THE SETTLEMENT ...................................................................................................7

    I.    Revisions...........................................................................................................................7

    II.    Class Definition ................................................................................................................7

    III.    Declaratory Relief.............................................................................................................8

    IV.    Notice................................................................................................................................8

    V.    Reporting..........................................................................................................................9

    VI.    Attorneys' Fees and Expenses .......................................................................................11

    VII.    Release ..........................................................................................................................11

ARGUMENT...................................................................................................................................12

    I.    Preliminary Approval of the Settlement is Appropriate .................................................12

        A.    The Settlement is Fair, Reasonable, and Adequate................................................13

        B.    The Settlement is the Result of Arm's-Length Negotiations.................................17

CONCLUSION ...............................................................................................................................17

**PRELIMINARY STATEMENT**

This action was filed by New York Medicaid recipients alleging that they were unable to obtain medically necessary dental care and that oral care is critical to a person's overall health. The action sought a declaration that the express policy of the New York State Medicaid Program (the "Program" or "New York Medicaid") denying Medicaid coverage for certain medically necessary dental care violates federal law, together with a permanent injunction prohibiting that practice. After over four years of vigorous litigation on both sides—including fact and expert discovery with substantial document productions, depositions, and expert reports—mediation has resulted in a fair, adequate and reasonable settlement that will greatly expand access to dental care in New York. The Parties now seek the Court's preliminary approval of their agreement, which was negotiated at arm's length, with mediation assistance from Magistrate Judge Sarah L. Cave.[1]

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.   PARTIES**

This action was brought by Plaintiffs Frank Ciaramella, Lillian Velazquez, AnneMarie Walker, Antonio Martin, Christopher Russo, Matthew Adinolfi, Jody Virtuoso, Yvonne Hawkins, Blanca Coreas, and Brenda Perry ("Named Plaintiffs"), on behalf of themselves and all others similarly situated ("Plaintiffs"). Each Named Plaintiff was allegedly denied medically necessary dental care by the Program. For example, Antonio Martin lost his dentures while he was street homeless. He requested and was denied replacement dentures because of the Program's prohibition against replacement dentures within eight years of initial placement.

---

[1] Counsel for Plaintiffs (defined below) have met and conferred with counsel for Defendant (defined below), who have confirmed that Defendant does not oppose the relief sought in this Motion.

1

Following Defendant's promulgation of the Revised Replacement Dentures Policy (defined below) and receiving supportive housing after 30 years of homelessness, Mr. Martin again requested replacement dentures. He was again denied Medicaid coverage under the Revised Dental Services Policies (defined below).

Defendant James V. McDonald became the new acting Commissioner of the Department of Health of the State of New York ("Defendant" or "DOH" and, with Plaintiffs, the "Parties"), and was therefore automatically substituted for Mary T. Bassett as an official capacity defendant pursuant to Fed. R. Civ. P. 25(d). Mary T. Bassett had previously replaced Defendant Howard Zucker as Commissioner.

## II. PROCEDURAL HISTORY

On August 2, 2018, Plaintiffs Frank Ciaramella and Richard Palazzolo commenced the above-captioned action ("Action") by filing a class action complaint ("Complaint") on behalf of themselves and all others similarly situated against Defendant, alleging that the denial of medically necessary dental care by the Program because of its categorical ban on coverage of dental implants ("Implants Policy") and the strict limits on the coverage of replacement dentures ("Replacement Dentures Policy") violates the Medicaid provisions of the Social Security Act, 42 U.S.C. 1396, *et seq*. ("Medicaid Act"), the Americans with Disabilities Act (the "ADA"), and the Rehabilitation Act of 1973 ("Rehabilitation Act"), and seeking declaratory and injunctive relief.

On August 15, 2018, Plaintiff Frank Ciaramella moved the Court for the issuance of a preliminary injunction (i) enjoining Defendant from continued enforcement of the Implants Policy and Dentures Policy; and (ii) requiring Defendant to provide Medicaid funding for certain medically necessary dental care for Plaintiff Ciaramella ("Preliminary Injunction Motion").

On or about September 11, 2018, DOH revised the Implants Policy and Replacement Dentures Policy, effective November 12, 2018 (respectively, "Revised Implants Policy" and "Revised Replacement Dentures Policy").

On September 27, 2018, Defendant filed a Motion to Dismiss and a Motion opposing Class Certification.

On October 2, 2018, by Stipulation and Order, so-ordered on October 3, 2018, DOH agreed to grant prior approval for Plaintiff Ciaramella to receive Medicaid coverage for the dental procedures as defined in that Stipulation and Order, and the Order to Show Cause was subsequently held in abeyance for thirty (30) days.

On October 25, 2018, Plaintiffs filed an amended class action complaint, adding additional Named Plaintiffs Lillian Velazquez, AnneMarie Walker, Antonio Martin, Christopher Russo, Matthew Adinolfi and Jody Virtuoso, and also adding new claims alleging that the denial of medically necessary dental care by New York Medicaid because of the Program's strict limits on the coverage of endodontics ("Endodontics Policy") and crowns ("Crowns Policy"), and that the Revised Implants Policy and Revised Replacement Dentures Policy violate the Medicaid Act, the ADA, and the Rehabilitation Act.

On November 1, 2018, Plaintiffs filed a Motion to File a Corrected Class Action Complaint to correct the spelling of the names of Plaintiffs Lillian Velazquez and Matthew Adinolfi. On the same day, Plaintiffs' Motion was granted and a Corrected Class Action Complaint was filed ("First Amended Complaint").

On November 2, 2018, Plaintiffs filed an Amended Motion for Class Certification ("Motion for Class Certification").

3

On November 12, 2018, the Revised Implants Policy and Revised Replacement Dentures Policy became effective.

On November 15, 2018, Defendant filed a Motion to Dismiss the First Amended Complaint in its entirety ("Motion to Dismiss").

On December 19, 2018, the Motion for Class Certification and the Motion to Dismiss were fully briefed.

On July 18, 2019, by Stipulation and Order, which was so-ordered on July 19, 2019, DOH agreed to grant prior approval for Plaintiff Velazquez to receive Medicaid coverage for the Root Canal Procedure as defined in that Stipulation and Order.

On September 30, 2019, the Honorable District Judge Paul Oetken issued an Opinion and Order ("September 30 Order") granting in part and denying in part Defendant's Motion to Dismiss, and granting Plaintiffs' Motion for Class Certification with respect to a class ("Class") of:

> All New York Medicaid-eligible individuals whose expenses associated with medically necessary dental services are not reimbursable by New York Medicaid because of the Program's categorical ban on dental implants and limits on replacement dentures, root canals, and crowns.

The September 30 Order further found: (1) Plaintiffs' Third Claim for Relief for alleged violations of the federal Medicaid Act's "reasonable promptness" provision, 42 U.S.C. § 1396(a)(8), should be dismissed; (2) the ADA and Rehabilitation Act claims brought by Plaintiffs Adinolfi and Virtuoso should be dismissed; (3) Plaintiff Palazzolo's claims were dismissed as moot; and (4) Plaintiffs' challenge to the Revised Implants Policy and Revised Replacement Dentures Policy was dismissed with leave for Plaintiffs to replead to establish standing.

On November 12, 2019, Plaintiffs filed the still-operative Second Amended Class Action Complaint ("Second Amended Complaint") naming additional plaintiffs Yvonne Hawkins, Blanca Coreas, and Brenda Perry, who Plaintiffs alleged had been denied medically necessary dental services under the Revised Implants Policy and Revised Replacement Dentures Policy, which Plaintiffs asserted cured the purported standing defect found in the September 30 Order, and on November 13, 2019, Plaintiffs refiled the Second Amended Complaint with a corrected caption.

On November 13, 2019, Plaintiff Yvonne Hawkins moved the Court for the issuance of a preliminary injunction requiring Defendant to provide Medicaid funding for Plaintiff Hawkins's replacement dentures and related treatments.

On December 20, 2019, by Stipulation and Order, which was so-ordered on December 23, 2019, DOH agreed to direct Plaintiff Hawkins's Managed Care Organization to provide coverage for Plaintiff Hawkins to receive a medically necessary mandibular lower denture.

On May 5, 2020, by Stipulation and Order, which was so-ordered on the same day, Plaintiff Ciaramella's Preliminary Injunction Motion was withdrawn with prejudice.

On December 9, 2022, by Proposed Stipulation and Order, DOH agreed to direct Plaintiff Perry's Managed Care Organization to provide coverage for certain medically necessary dental care for Plaintiff Perry.

On December 21, 2022, by Proposed Stipulation and Order, DOH agreed to direct Plaintiff Coreas's Managed Care Organization to provide coverage for certain medically necessary dental care for Plaintiff Coreas.

During the course of this litigation, Plaintiffs Ciaramella, Virtuoso, Martin, and Hawkins died, and Suggestions of Death were filed with the court, and accordingly they are neither parties to this Stipulation nor members of the Class.

Defendant has denied, and continues to deny, any wrongdoing, liability, or violation of any federal, state, or local statue, ordinance, or law with respect to Plaintiffs.

### III. DISCOVERY AND MEDIATION

Over the course of fact discovery, the parties exchanged approximately 20,000 documents.

Plaintiffs took the deposition of five fact witnesses, including Defendant's 30(b)(6) witness, while Defendant took the depositions of nine Named Plaintiffs via written questions and answers. Additionally, Plaintiffs produced two expert reports from two testifying experts, and Defendant deposed both experts.

The Parties engaged in various disputes regarding fact and expert discovery, some of which were resolved consensually and others which required resolution by the Court.

The Parties participated in multiple mediation sessions presided over by Magistrate Judge Sarah L. Cave.

In order to resolve this action and avoid the burden, expense, and uncertainty of further litigation, the Parties have negotiated revisions to the New York State Medicaid Dental Manual (the "Dental Manual"), specifically the Revised Implants Policy, Revised Replacement Dentures Policy, Endodontics Policy, and Crowns Policy that Plaintiffs challenged in this Action ("Revised Dental Services Policies"), described in the following section.

The Parties are entering into the accompanying Stipulation of Class Action Settlement and General Release ("Stipulation") solely for the purpose of resolving the remaining disputed

issues and to avoid further litigation, and without any admissions by any Party, and to settle this Action on terms and conditions just and fair to all Parties.

## TERMS OF THE SETTLEMENT

The key terms of the Stipulation are briefly summarized below.

### I.     REVISIONS

The Parties have negotiated the comprehensive settlement Stipulation attached to the Declaration of Wesley R. Powell in Support of Plaintiffs' Unopposed Motion for Preliminary Approval ("Powell Declaration") as Exhibit A. The centerpiece of the settlement is the Revised Dental Services Policies, in the form attached to the Powell Declaration as Exhibit A.1, which is to be included in the Dental Manual.

The Parties have negotiated a number of related documents which are exhibits to the Stipulation:

- Guidance regarding the Revised Dental Service Policies (the "Guidance") is attached to the Powell Declaration as Exhibit A.2.

- The proposed notice of the Stipulation's preliminary approval for distribution to the Class ("Fairness Notice"), to be published as detailed in Section IV below, is attached to the Powell Declaration as Exhibit A.3.

- Prior authorization forms for replacement dentures and implant-related services are attached to the Powell Declaration as Exhibits A.4 and A.5.

### II.    CLASS DEFINITION

The "Settlement Class" or "Plaintiff Class" is defined as follows:

> All Enrollees and New York State Medicaid-eligible individuals over the age of 21 whose expenses associated with medically necessary dental services are not reimbursable by New York State's Medicaid program (the "Program") because of the

7

>> Program's limitations on dental implants, replacement dentures, root canals, and crowns.

Stipulation ¶ 2.

## III.   DECLARATORY RELIEF

As reflected in the Stipulation, Defendant has agreed to revise the Dental Manual to provide Medicaid coverage for medically necessary dental treatment to members of the Class. Within seven (7) days of these revisions becoming effective, Defendant will notify all Plans,[2] local social services districts, and the New York State Office of Temporary and Disability Assistance ("OTDA") via letter or other written notice, and all New York State Medicaid dental providers via www.eMedNY.org, of the implementation of the Revised Dental Services Policies contained in the Dental Manual and the Guidance. Defendant will make these updates available on its website. Stipulation ¶ 20. Defendant has also agreed not to modify these revisions in any way that may negatively affect the Class' access to dental services, absent the prior written consent of Plaintiffs' counsel or other extenuating circumstances, for a period of four (4) years. Stipulation ¶ 23. Additionally, within sixty (60) days of the effective date of the Stipulation, DOH shall (i) prepare and present a live webinar to educate Plans, New York State dental providers, local social services districts, and the Office of Administrative Hearings at OTDA (which conducts administrative fair hearings on behalf of DOH) on the Revised Dental Services Policies, and (ii) post such webinar on DOH's website. Stipulation ¶ 24.

## IV.   NOTICE

The Fairness Notice, Powell Dec. Ex. A.3, will be provided through the following methods:

---

[2] "Plan" or "Plans" refers to Managed Care Organizations ("MCOs") and Managed Long Term Care organizations that provide dental coverage to Medicaid recipients in the State of New York.

8

(1) DOH shall direct the Fairness Notice to be displayed on an 8.5 inch x 14 inch posting, in English and Spanish, at the following locations: (a) all waiting rooms in local social service district offices and Medicaid offices, (b) all waiting rooms in New York Academic Dental Center clinics licensed under Article 28 of the NY Public Health Law, and (c) all client waiting areas at the OTDA's Boerum Place, Brooklyn, New York fair hearing center;

(2) DOH will cause the Fairness Notice to be posted on its website in English and Spanish;

(3) The Legal Aid Society will post the Fairness Notice on its website in English and Spanish;

(4) The Legal Aid Society will circulate an electronic copy of the Fairness Notice to Medicaid-related advocates' listservs in English and Spanish; and

(5) DOH will mail a copy of the Fairness Notice, by first class mail, to the last known addresses of the Named Plaintiffs.

Stipulation ¶¶ 18-19.

The Fairness Notice describes who should read it, contains a summary of the proposed settlement, and informs Class Members of the right to object or comment on the proposed settlement.

V.     **REPORTING**

Defendant has agreed to provide Plaintiffs' counsel with "Fee-for-Service Reports" beginning one year following the date upon which the Revised Dental Services Policies and expanded benefit coverage go into effect ("Implementation Date"). Reporting will continue on a tri-annual basis. The Fee-for-Service Reports will show: (i) the number of individuals who have requested crowns, endodontics, replacement dentures, or implant-related care through Fee-For-

9

Service Medicaid; (ii) the number of such requests that have been granted and/or denied (in whole or in part); and (iii) the reasons for or rationale behind any such denials. Stipulation ¶ 40.

Defendant also agreed to conduct a "Focused Survey" following the Implementation Date. The Focused Survey will collect data from each of the MCO Plans participating in the Medicaid Program and will monitor each MCO Plan's compliance with the Revised Dental Services Policies. For MCO Plans found to be in non-compliance, Defendants shall issue a Statement of Deficiency ("SOD") to the MCO Plan upon discovery of such non-compliance. The MCO shall then issue a Plan of Correction ("POC") to the Defendant within 30 days for approval by DOH. If such POC does not meet the expectations of DOH with regard to curing non-compliance and ensuring ongoing compliance, DOH may reject the POC and request a new POC be supplied that will achieve compliance. Defendant agreed to provide Plaintiffs' counsel, within one year of the Implementation Date, documentation sufficient to show that a Focused Survey was completed for each MCO Plan, along with the outcome of each Focused Survey, which shall include, at a minimum, any SOD issued to a non-compliant MCO Plan, any POC provided by a non-compliant MCO, and any letter sent to an MCO Plan confirming the MCO Plan's compliance. Stipulation ¶ 41.

In addition to completing the Focused Survey, Defendant will continue to monitor compliance with the Revised Dental Services Policies through DOH's bi-yearly "Operational Survey" of each MCO Plan. These surveys are conducted on a rolling basis across all MCO Plans as part of DOH's normal course of business. The Operational Survey will collect and review data regarding MCO Plans' administration of the Revised Dental Services Policies. Further, the Operational Survey will revisit any compliance issues previously identified in the Focused Survey to ensure continued compliance. Defendant shall provide Class Counsel on a

quarterly schedule, through and until three (3) years after the effective date of the Stipulation ("Termination Date"), Operational Survey data relevant to the Revised Dental Services Policies for each MCO Plan surveyed during that quarter. The Operational Survey data will include all SODs issued by DOH to the MCO Plans, and all POCs received by DOH related to the Revised Dental Services Policies. For the avoidance of doubt, each MCO Plan will be subject to an Operational Survey at least once before the Termination date. Stipulation ¶ 42.

Defendant also agreed to provide Plaintiffs' counsel with the results of "Members Services Survey Calls" related to the Revised Dental Services Policies on an annual basis following the Implementation Date until the Termination Date. Defendant, by and through a contracted external review team, conducts phone calls to MCO Plan Members Services call centers to assess the quality and accuracy of information provided by MCO Plan customer service representatives to actual or prospective enrollees. Defendant agreed to supplement the survey with questions regarding the Revised Dental Services Policies. Stipulation ¶ 43.

Taken together, Defendant's negotiated reporting requirements will enable Plaintiffs' counsel to monitor Defendant's and the MCOs' compliance with the Revised Dental Services Policies from the Implementation Date until the Termination Date.

## VI. ATTORNEYS' FEES AND EXPENSES

As set forth in the Stipulation, the Parties have agreed that Defendant shall reimburse Plaintiffs for attorney's fees and expense in the total amount of $3,300,000.00. Stipulation ¶ 31.

## VII. RELEASE

In exchange for the relief described above, Defendant and the State of New York will receive a full release of all claims arising out of, related to, or arising from the coverage rules challenged in this litigation, including but not limited to claims under the First Amended Complaint and the operative Second Amended Complaint in this Action. Stipulation ¶ 54.

**ARGUMENT**

**I.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

In evaluating class settlement approvals, courts should give "proper deference to the private consensual decision of the parties," and consider "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014) (citation and internal quotation marks omitted).

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013). Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) (citation and internal quotation marks omitted).

To grant preliminary approval, the court need only find "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D.

12

174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same).

If the settlement results from experienced counsel's arm's-length negotiations, "[a]bsent fraud or collusion, courts should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Peoples v. Annucci*, 180 F. Supp. 3d 294, 307 (S.D.N.Y. 2016) (citation and internal quotation marks omitted).

### A.   The Settlement is Fair, Reasonable, and Adequate.

The settlement here is fair, reasonable, and adequate. The Second Circuit has established a nine-factor test to assess the fairness, reasonableness, and adequacy of class action settlements. *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 763 (2d Cir. 2020) (applying the test set forth in *City of Detroit v. Grinnell Corp.* 495 F.2d 448, 463 (2d Cir. 1974)). These factors are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Id.*[3]

The nine *Grinnell* factors "have been applied in tandem" with the four enumerated factors in Rule 23(e)(2). *Pearlstein v. BlackBerry Ltd.*, No. 13-cv-7060-CMKHP, 2022 WL

---

[3] *Grinnell* factors 5, 7, 8 and 9 are inapplicable here, as this action principally seeks declaratory and injunctive relief. *See* Second Amended Complaint, dated November 12, 2019, at ¶¶ 5, 24.

13

4554858, at *7 (S.D.N.Y. Sept. 29, 2022).  The Rule 23(e)(2) factors are whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's-length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).  "There is significant overlap between the Rule 23(e)(2) and *Grinnell* factors, which complement, rather than displace each other."  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019).  Accordingly, Plaintiffs address the applicable *Grinnell* factors and pertinent Rule 23(e)(2) considerations below.

        1.     *The Litigation Would Likely be Complex, Costly, and Long.*

In reaching a favorable settlement, Plaintiffs seek to avoid further litigation that would be long, costly, and complex.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank,* 236 F.3d 78 (2d Cir. 2001).  A settlement prior to trial is therefore the most efficient and wisest course of action in this action.  *See Heyer v. N.Y.C. Hous. Auth.*, No. 80-1196, 2006 WL 1148689, at *3 (S.D.N.Y. Apr. 28, 2006).

Further litigation would require extensive preparation for trial and, if necessary, an appeal.  Plaintiffs have agreed to the proposed Settlement in an effort to avoid significant expense and delay, and to ensure certain and very meaningful recovery for the class.  A trial in

14

this case would require hundreds of hours of additional work for the parties. This factor, therefore, weighs heavily in favor of granting the preliminary approval.

2. *Plaintiffs Are Not Aware of Any Opposition from Class Members.*

Given that the notice of the settlement has not yet been issued to the Class,[4] Plaintiffs are not able to fully gauge the reaction of the Class at this time. *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature."). To date, Plaintiffs are unaware of any opposition to the Settlement, from class members or others.

3. *Discovery has advanced sufficiently to allow the parties to resolve the case responsibly.*

Both parties exercised the opportunity to resolve this case responsibly through extensive discovery. The proper inquiry at this stage is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08-8713, 2010 WL 2399328, at *5 (S.D.N.Y. Mar. 3, 2010) (citation and internal quotation marks omitted). Plaintiffs' counsel have interviewed class members as well as obtained, reviewed, and analyzed thousands of documents produced by the parties and several non-parties. Plaintiffs also worked with experts to evaluate their claims and negotiate the Settlement.

---

[4] Rule 23 "does not . . . oblige the District Court to afford [(b)(1) or (b)(2)] class members notice." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011); *see also German v. Fed. Home Loan Mortg. Corp.*, 168 F.R.D. 145, 160 (S.D.N.Y. 1996) (noting that the Second Circuit has not required notice in (b)(2) class actions). However, this Court "*may* direct *appropriate* notice to the class." *Meachem v. Wing*, 227 F.R.D. 232, 235 (S.D.N.Y.), *adhered to on denial of reconsideration*, 227 F.R.D. 237 (S.D.N.Y. 2005). Plaintiffs have determined that the most effective way to provide notice to class members—based in particular on the experience of the Legal Aid Society's Health Law Unit—is through the message and method described in the Stipulation, and *supra*, which includes, displaying the Fairness Notice in the specified OTDA waiting areas, among other locations. Powell Decl. ¶ 19. The Fairness Notice is therefore adequate. *See Meachem*, 227 F.R.D. at 235 (approving (b)(2) notice plan where notice was posted in the waiting rooms of OTDA sites, mailed to all known OTDA advocacy groups, and posted online and to a "listserv" of advocacy organizations).

Through the fact and expert discovery that has already taken place, both parties gained a strong familiarity with the facts of the case, which justifies their settlement efforts and in recommending the settlement to the Court. *See Heyer*, 2006 WL 1148689, at *3. Accordingly, this factor also favors preliminary approval.

>   4. *Plaintiffs have considered the risk of establishing liability, damages, and of continuing the action through to trial.*

Although Plaintiffs' case is strong, it is not without risk. Defendant previously filed a Motion to Dismiss, which resulted in dismissal of certain claims, and absent this Settlement Defendant may move for summary judgment. In weighing the risks of establishing liability, this Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (citation and internal quotation marks omitted). Plaintiffs' counsel appreciate that the outcome of subsequent motions and trial is uncertain. Even more, for our class members—New York Medicaid-eligible individuals with unreimbursable expenses stemming from urgent and necessary dental care—the certainty of a fair and timely resolution is paramount.

In this case, the agreed-upon relief—requiring Defendant to substantially revise the Dental Manual to provide Medicaid coverage for medically necessary dental treatment to members of the Class—squarely addresses Plaintiffs' claims. While Plaintiffs expect to be able to establish Defendant's liability at trial, that outcome is not certain, as Plaintiffs' counsel can foresee that Defendant will vigorously defend against Plaintiffs' claims through trial and appeal. The anticipated expense, delay, and uncertainty resulting from continued litigation would undermine the goals of this action.

The Settlement, if approved, will provide timely and urgently-needed relief to the Class Members and mitigate the uncertainty inherent in continued litigation. Powell Decl. ¶¶ 24-25.

The settlement thus satisfies the requirements set forth in *Grinnell* and warrants a grant preliminary approval.

### B. The Settlement is the Result of Arm's-Length Negotiations.

A proposed settlement is presumed to be fair and reasonable where, as here, it results from arm's-length negotiations conducted by capable counsel experienced in class action litigation and occurring after meaningful discovery. *See Hernandez v. Between the Bread 55th Inc.*, 2020 WL 6157027, at *5 (S.D.N.Y. Oct. 21, 2020); *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, No. 94-403, 2002 U.S. Dist. LEXIS 16314 (E.D.N.Y. Aug. 1, 2002). The settlement here is the result of hard-fought litigation, multiple mediation sessions, and subsequent negotiation between Plaintiffs' and Defendant's counsel.

Courts also recognize the opinion of experienced and informed counsel who support settlement. Here, Plaintiffs' counsel strongly recommends preliminary approval of the proposed settlement based upon their experience in complex class action litigation, their knowledge of the law, their assessment of the strengths and weaknesses of the case, their consideration of the discovery to date, the likelihood of obtaining relief at trial or on appeal, and all other factors considered in evaluating proposed class action settlements.

### CONCLUSION

For all the reasons above, this Court should grant preliminary approval of the proposed Settlement.

Dated: New York, NY
May 1, 2023

Respectfully submitted,

/s/ Wesley R. Powell
Wesley R. Powell
M. Annie Houghton-Larsen
Sean R. Lavin
Timothy P. Ryan

17

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
tel. (212) 728-8000
fax. (212) 728-8111
e-mail: wpowell@willkie.com
e-mail: mhoughton-larsen@willkie.com
e-mail: slavin@willkie.com
e-mail: tryan@willkie.com

FRESHFIELDS BRUCKHAUS DERINGER US LLP
Mary Eaton
601 Lexington Avenue, 31st Floor
New York, New York 10022
tel. (212) 277-4000
e-mail: mary.eaton@freshfields.com

THE LEGAL AID SOCIETY
Judith Goldiner
Belkys Garcia
199 Water Street, 3rd Floor
New York, New York 10038
tel. (212) 577-3300
e-mail: jgoldiner@legal-aid.org
e-mail: brgarcia@legal-aid.org

*Attorneys for Plaintiffs*